37 So.2d 715

**CARRERE et al. v. ORLEANS CLUB et al.**

No. 38383.

July 2, 1948.

Rehearing Denied Nov. 8, 1948.

Leander Perez and Ernest A. Carrere, Jr., both of New Orleans, for plaintiffs and appellees.

Henry G. McCall, City Atty. and Henry B. Curtis, Asst. City Atty., both of New Orleans, for City of New Orleans, defendant and appellant.

Jones, Flanders, Waechter & Walker, Bert Flanders, Jr., J. Mort Walker, Jr., Wm. B. Dreux and Elmer D. Flanders, all of New Orleans, for Orleans Club, defendant and appellant.

FOURNET, Justice.

The City of New Orleans and the Orleans Club are appealing from a judgment enjoining the erection of a brick addition to the club's existing building under a permit issued by the city's engineer and also prohibiting the city from issuing any permit whatever to the club authorizing the erection of a building, addition to, or structural alteration of the club's present facilities unless such permit is specifically authorized by the Commission Council in its discretion upon the application of not less than 70% of the property owners within 300 feet of the club premises.

The building and premises that are owned and operated by the Orleans Club are located in what is termed a "C" Apartment District in the Comprehensive Zone Law adopted by the City of New Orleans as Ordinance No. 11,302 C. C. S. on June 1, 1929, the pertinent part of which reads as follows:

"* * * in the 'C' and 'D' Apartment Districts no building or premises shall be used and no building shall be hereafter erected or structurally altered, unless otherwise provided in this ordinance except for one or more of the following uses:

"1. Any use permitted in the 'B' Residence District.

"2. Multiple Dwellings.

"3. Apartment Hotels.

"4. Private Clubs and Lodges, excepting those the chief activity of which is a

service customarily carried on as a business, provided, however, that the Commission Council may in its discretion, permit private clubs and lodges, excepting those the chief activity of which is a service customarily carried on as a business, within the 'C' and 'D' apartment districts, upon the application of not less than seventy (70%) percent of the property owners within 300 feet of any and all portions of the premises to be so used."

The city engineer, who is charged with the enforcement of this zoning law, pursuant to a ruling obtained from the office of the city attorney that he should issue permits for alterations and additions to private clubs under sub-section 4 of Section 5 of this ordinance without councilmanic action if the chief activity of the club is not one customarily carried on as a business, issued, on February 25, 1946, permit No. 24,888 authorizing the construction of a "lecture hall" as an addition to the present Orleans Club building, in accordance with the plans and specifications submitted with the club's application. The plaintiffs, Ernest A. Carrere, Mrs. Elsie Jennie Wehrman, Mrs. Elizabeth Staplecamp, and Theodore A. Gugert, property owners residing within 300' of the club's premises, learning of the issuance of this permit through the newspapers, instituted these proceedings on April 11, 1946, for the purpose of halting the construction of this addition and of preventing the future issuance of any such permits unless they were authorized by the Commission Council upon the application of not less than 70% of the property owners. Pending a hearing on the application for a preliminary injunction (which was later granted and finally made peremptory), they secured a temporary restraining order to this effect.

The issues raised by the plaintiffs in their pleadings may be fairly stated to be as follows:

(1) The chief activity of the Orleans Club is a service customarily carried on as a business in that the club's rooms are rented for dances, weddings, receptions, cocktail parties, and other social gatherings, while its bedrooms are rented to non-members and its beauty parlor and rental library are operated for profit. (2) In the alternative, that if the club does not fall into this category, then that sub-section 4 of Section 5 prohibits the use of the premises as a private club without a permit issued by the Commission Council upon the application of not less than 70% of the property owners, it being their contention that the present club was only allowed to continue its operations because it was already established at the time the zoning ordinance went into effect, consequently, that as a non-conforming establishment in this district the club can only expand under the conditions set out in sub-section (b) of Section 10 of the ordinance. (3) In the further alternative, that the rental of the club facilities for these various social functions constitutes a nuisance in that the

users of the facilities bring innumerable automobiles into the area causing traffic congestion and blocking entrances to the homes; are loud and noisy in the early morning hours while lingering about after parties; and bring chauffeurs who, while awaiting their employers, trespass upon the lawns of the plaintiffs and engage in unsavory activities.

The defendants, on the other hand, contend that the proviso in Section 5 relative to councilmanic action predicated upon a percentage of property owner approval does not apply to a private club whose chief activity is not a service customarily carried on as a business; in the alternative, that if it does, then that such provision is unconstitutional for the following reasons: (1) It unlawfully delegates legislative police power to private citizens; (2) denies the club of due process since it is deprived of the use of its property upon the whim or caprice of other property owners without recourse or appeal; (3) deprives the club of equal protection by vesting in the Commission Council the arbitrary power of giving or withholding a permit to a private club; and (4) deprives the club of its property for reasons that are not based on substantial and reasonable regard for public health, safety, morals, or general welfare.

In order that the issues raised in this case may be understood and properly disposed of, it is necessary that a brief statement be given of the origin and activities of the Orleans Club in relation to the events leading up to the institution of this suit, as they are reflected by the record.

In 1925, four years prior to the adoption of the Comprehensive Zoning Law, a group of women from various organizations who felt the need for a clubhouse wherein might be housed all of the various activities in which women are interested; banded together to form what is now known as the Orleans Club, a non-profit corporation operating under a charter and by-laws. The purpose of this club, as expressed in its charter, is to associate into closer bonds of unity all women who are interested in art, music, and literature, as well as in the social, civic, philanthropic, professional, and financial affairs of the community so that the dignity, honor, and character of all that pertains to the interest and activities of women might be promoted. To this end they purchased in an exclusive uptown section a large and imposing residence facing on St. Charles Avenue that had theretofore been maintained as a home from the time of its construction in 1868. They paid $62,500 for this building, the down payment being made with a part of the funds derived from the sale of stock in the new organization. They spent $10,000 renovating the building so that it might conform to their club needs and later the sums of $6,200 for a port-cochere and driveway, and $2,500 for interior decoration. This building is three stories high. The first floor consists of the parlor, drawing room,

library, dining room, and kitchen facilities, in addition to the entrance hallway and stairway. The executive offices and committee room are on the second floor, as are also three bedrooms that are available to the friends of the members and to members for a stipulated rental and other rooms that may be used for bridge and as dressing rooms for wedding parties. On the third floor, in addition to other bedrooms, the club installed in 1927 a beauty parlor that is run for the convenience and exclusive use of the members by one operator.

Beginning with a charter membership of 300 and an associate membership of 300 in 1925, the club has continued to grow. A junior membership was added the following year. Today the membership is over 800. The club has also prospered financially. By 1935, despite the depression and large amounts expended on upkeep and improvement, the club was entirely free of debt.

An analysis of the club's operation for the year ending March 31, 1946, as made up by certified public accountants shows the principal revenue of the club is derived from dues paid by members ($20,381.25) and from meals ($17,313.66, over $15,000 of this amount coming from members exclusively). The remaining revenue of the club, derived from the rental of club rooms, bedrooms, teas, beauty parlor, donations, and miscellaneous sources, amounted to approximately $13,000.

It appears that the club, with the idea of expanding, applied for permission to construct an assembly room on the premises in 1937 but that such application was later withdrawn because of the protest of a number of property owners and residents in the vicinity. In 1941 the club approached the city engineer with the idea of securing permission to enlarge its dining room facilities on the downtown or Robert street side by the construction of a one story glass enclosed extension overlooking the patio that would accommodate 300. The property owners again objected and the city engineer requested a ruling from the city attorney before issuing such permit. Upon being advised that as a club engaging in various social functions as its chief activity, the rental of its club rooms not constituting its chief activity, the permit for alterations and additions should be granted without councilmanic action provided all regulations relative to set backs and rear yard area provisions were complied with, the city engineer issued the desired permit and the floor area of the dining room was enlarged by an extension of forty-three feet. The plaintiffs instituted these proceedings when they were apprised through the press that the city engineer had granted the club another permit on February 25, 1946, for the construction of an auditorium abutting the uptown side of the building.

The record unmistakably shows that the Orleans Club is being operated as a private club and that its chief activity is not a

service customarily carried on as a business. The uncontroverted testimony of appellants' witnesses is to the effect that the club is chiefly engaged in serving teas, luncheons, and dinners that are attended almost exclusively by members and their occasional guests, and in presenting book reviews, lectures, and addresses by prominent persons to the membership and their occasional guests. The club facilities may not be rented for weddings, dances, and other parties by the public at large. The person or organization desiring to rent these facilities must make formal application under the sponsorship of three members of the club who are held responsible not only from a financial standpoint but also for the actions of the applicants while they are on the premises. The rental library and the beauty parlor are operated for the exclusive use and convenience of the membership and the bedrooms in the building are only rented to members or their guests. Meals are not served to the public and not even to members unless, on the day previous, adequate arrangements have been made.

After a careful and thorough investigation of the affairs of the Orleans Club, its purpose and organization, its status as a non-profit private organization was recognized by the Treasury Department of the United States and a club was exempt from income and capital stock taxation under Section 101(9) of the Internal Revenue Code, 26 U.S.C.A. § 101(9), which provides that clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder, are exempt from taxation.

Having concluded that the chief activity of this club is not a service customarily carried on as a business, we pass to the alternative contention of the plaintiffs that in "C" and "D" Apartment Districts private clubs and lodges the chief activity of which is a service customarily carried on as a business are unqualifiedly prohibited by sub-section 4 of Section 5 of the Comprehensive Zone Law, but that if the chief activity of such club is not a service customarily carried on as a business, the Commission Council may, in its discretion, permit these within the district upon the application of not less than 70% of the property owners within 300' of the premises to be so used and that since such a permit was not obtained from the Commission Council for the operation of the Orleans Club the use to which this property is presently being put is non-conforming and the club's right to expand is limited to such rights as it may have under sub-section (b) of Section 10 of the zoning law.

We are unable to eke out from the language used in this sub-section the interpretation sought to be placed thereon by the plaintiffs. After a careful study and analysis of sub-section 4, when it is read in connection with the object of the or-

dinance and the other provisions thereof, we are compelled to conclude that it was the intention of the Commission Council adopting this ordinance to permit the use of all property within "C" and "D" Apartment Districts for clubs and lodges when their chief activity is not a service customarily carried on as a business, and to even permit those whose chief activity is carried on as business in the discretion of the council when such discretion is predicated upon the application of 70% of the property owners in the immediate vicinity.

The only portion of this sub-section that is confusing is to be found in the proviso declaring "however, * * * the Commission Council may in its discretion, permit private clubs and lodges, excepting those the chief activity of which is a service customarily carried on as a business, within the 'C' and 'D' apartment districts, upon the application of not less than seventy (70%) percent of the property owners within 300 feet of any and all portions of the premises to be so used." Obviously, the lawmakers intended that the underscored word "excepting" should be "including," otherwise this latter clause would be contradictory with the one immediately preceding it which specifically permits the use of the property in this district for clubs when the chief activity thereof is not a business without any councilmanic action predicated upon property owner approval.

■ This interpretation is in accord with the well settled rule of law that a zon-ing ordinance, being in derogation of the rights of private ownership and curtailing and limiting the use of property, must be strictly construed in favor of the property owner and where exemptions appear in favor of the property owner they should be liberally construed in his favor. 440 East 102nd Street Corporation v. Murdock, 285 N.Y. 298, 34 N.E.2d 329; City of Little Rock v. Williams, 206 Ark. 861, 177 S.W.2d 924; Corcoran v. S. S. Kresge Co., 313 Mass. 299, 47 N.E.2d 257; People ex rel. Ortenberg v. Bales, 224 App.Div. 87, 229 N.Y.S. 550; Chamberlain v. Roberts, 81 Colo. 23, 253 P. 27; Monument Garage Corporation v. Levy, 266 N.Y. 339, 194 N.E. 848; Welch v. City of Niagara Falls, 210 App.Div. 170, 205 N.Y.S. 454; In re W. P. Rose Builders' Supply Co., 202 N. C. 496, 163 S.E. 462; and Town of Union v. Ziller, 151 Miss. 467, 118 So. 293, 60 A.L.R. 1155.

■ This is also in accord with the interpretation placed on this sub-section by the municipal authorities themselves and which, under our jurisprudence, is given great weight. State ex rel. Szodomka v. Gruber, 201 La. 1068, 10 So.2d 899.

■ Besides, we think it is consonant with logic and reason when we consider that under this same section property may be used for activities that are comparable in many respects to those of private clubs. For example, some of the uses to which property in this district may expressly and unqualifiedly be put are (1) public li-

braries and community centers owned and operated by governmental agencies; (2) fraternity and sorority houses; and (3) boarding and lodging houses.

Counsel have apparently abandoned the next alternative plea, that is, that the activities of the club as presently carried on constitute a nuisance, for this phase of the case is not covered in brief. In any event, the evidence fails to support this contention. The features that are termed objectionable in the pleadings constitute, at most, a private nuisance.

For the reasons assigned, the judgment of the lower court is annulled and set aside and the plaintiffs' suit is dismissed, at their cost.

O'NIELL, C. J., concurs.

HAMITER, J., does not take part.