15 N.J. Super. 73 (1951)
83 A.2d 28
SAMUEL YANOW, RESHELA YANOW, ABRAHAM G. HOROWITZ AND RUTH S. HOROWITZ, PLAINTIFFS,
v.
SEVEN OAKS PARK, INC., A NEW JERSEY CORPORATION, MAX MASIN, MORRIS TZESES, SEYMOUR MASIN, LEO MASIN, LEO TZESES, ARTHUR TZESES AND MILTON ALBERT, DEFENDANTS, AND EASTERN CHRISTIAN INSTITUTE, INTERVENING DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 20, 1951.
*75 Mr. Samuel S. Ferster, attorney for plaintiffs.
Messrs. Kristeller & Zucker, attorneys for all the defendants other than Eastern Christian Institute.
Messrs. McGlynn, Weintraub & Stein, attorneys for intervening defendant Eastern Christian Institute.
Mr. Edmond J. Dwyer, attorney for City of Orange, applicant for intervention.
STEIN, J.S.C.
Plaintiffs' amended complaint presents the following factual situation: On May 20, 1948, the defendant Seven Oaks Park, Inc., acquired by purchase four tracts of land in the City of Orange. Those tracts were contiguous to one another and the purchasing company laid them out into building lots shown on a map entitled "Map of Seven Oaks Park North, located at Orange, New Jersey, etc." The company filed the map in the Essex County Register's Office. On lot 9 in block "C," shown on that map, is situate a large three-story brick mansion house formerly occupied by the Colgate family and used only as a one-family residence.
In July of 1948, Seven Oaks Park, Inc., leased the Colgate mansion house to the East Orange General Hospital. The curtilage upon which the house stands is of considerable size, having a frontage on South Center Street of about 358 feet. The lease was for one year and the sanctioned use was for a nurses' training school and residence and for other hospital purposes. The premises were intended to furnish to the hospital a temporary nurses' home until a permanent nurses' home could be built elsewhere. The latter event happened and the mansion house was vacated in June of 1950.
The complaint charges that Seven Oaks Park, Inc., was entirely owned and controlled by the defendants Max Masin *76 (its president) and Morris Tzeses (its secretary) and that these persons, together with the defendant Leo Tzeses, constituted all of the company's stockholders, directors and officers. Plaintiffs further allege that in order to induce persons to purchase lots and dwellings from the tract aforementioned the defendants Max Masin and Morris Tzeses, acting in behalf of the selling company, falsely and fraudulently represented to such prospective purchasers that the entire tract shown on the map of Seven Oaks Park North, including the curtilage upon which stands the Colgate mansion house, would be used only for one-family residences and that the mansion house itself would soon be torn down because it was too large and too old to be used as a one-family residence. It is alleged that those representations were made in behalf of the owning company, that the officers making them knew them to be false, and that the representations were believed and relied upon by the purchasers, amongst whom are the four plaintiffs herein.
It is further charged that in October of 1950 the owning company conveyed substantially all the premises shown on the map (including the Colgate piece) to the individual defendants Seymour Masin, Leo Masin, Leo Tzeses, Arthur Tzeses and Milton Albert, but that said conveyance was taken by the grantees with full knowledge of the aforementioned representations, that on November 1, 1950, those grantees entered into an agreement to sell the Colgate property to the intervening defendant, Eastern Christian Institute, and that the Institute has announced and advertised that it intends to convert and use the structure as a classroom and dormitory for its student body.
The amended complaint further charges that the intended use of the Colgate house constitutes a violation of subsection 9 of section 2 of the building zone ordinance of the City of Orange, New Jersey, which prohibits the operation and conduct of a private school in the area where the Colgate house is situated (being the area in which the plaintiffs' properties are located) unless such use be with the written consent of *77 80 per cent (by frontage) of the owners of all lots within 200 feet of the property. It is further alleged that no such consent has been obtained.
The plaintiffs claim that not only does the proposed use of the Colgate property as a school and dormitory violate the zoning ordinance of the City of Orange but also violates a restrictive general scheme or plan resulting from the alleged representations that all the property shown on the map would be used only for one-family dwellings. Plaintiffs seek a restraint against the defendants from using or permitting the use of the Colgate house for any purpose other than that of a one-family residence and from erecting or permitting the erection anywhere on the whole tract of any buildings other than one-family residences. They further ask that the judgment restrict the use of all the lots shown on the map to one-family residences and, further, that the defendants be compelled to tear down the Colgate house.
The defendants other than the Institute have by their answers presented various defenses, amongst which are that the alleged restrictive scheme or plan is unenforceable and void because not being in writing it is within the statute of frauds, that conveyances have been made to bona fide purchasers without notice of the alleged representations, and that the occupancy and intended use of the Colgate mansion by the Eastern Christian Institute conforms with the zoning ordinances of the City of Orange.
The answer of the intervening defendant, Eastern Christian Institute, admits its agreement to purchase the Colgate house. It further pleads that the oral representations restricting the use of the property are unenforceable because they are not in compliance with the provisions of the statute of frauds. It further claims that it is an innocent purchaser, without notice of any unrecorded restrictions. It should here be noted that an undisputed fact in the case is that the Institute has not yet taken title but has paid a deposit of $10,000 against an agreed purchase price of $41,500, and that there remains unpaid of the purchase price a balance of $31,500.
*78 In view of the application made by the City of Orange to intervene in this controversy and because of the disposition the court makes of that application, it will be unnecessary at this time to consider the several defenses made and arguments advanced by the defendants, other than so much thereof as concerns the applicability of the zoning ordinance. The matters not so presently considered are reserved for the final trial of the action and will be considered at that time if the then posture of the case makes that course appropriate.
The City of Orange has asked leave to intervene as a defendant in this action in order to set forth by way of an answer (the form of which is attached to its notice for leave to intervene) the claim that the proposed use of the Colgate property by the Eastern Christian Institute is in violation of the zoning ordinance of the municipality. This intervention is resisted by all the defendants, their arguments being, in essence, that under the rules governing intervention the municipality has no such status as entitles it to presence in this action. I shall consider that question first, because its disposition in favor of the intervention sought disposes for the time being of all other points raised by the defendants and dictates a denial of the several motions for summary judgment against the plaintiffs.
It will be observed that the plaintiffs' amended complaint and the proposed answer by the City of Orange present a common ground of objection to the use of the Colgate mansion for school and dormitory purposes. That objection is that the proposed or threatened use is violative of the provisions of the local zoning ordinance. This common ground of objection undoubtedly provokes the same issues of fact and the same questions of law concerning the contemplated use of the Colgate house as a violation of the municipal zoning ordinance. Under Rule 3:24-3 intervention is permitted in an action when the applicant's claim or defense and the main action present a common question of law or fact. Clearly, that is the situation in the instant case. Of course, the allowance of intervention is within the discretion of the *79 court and in the exercise of that discretion the court is obliged to consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." No delay is here perceivable in allowing the municipality to intervene. The intervenor would be required to file its answer within a matter of days and the parties adverse to that answer would be required to respond thereto within a short time, all during the summer months when a final trial could not conveniently be had. Nor would the intervention prejudice the adjudication of the rights of the original parties. Quite the contrary. If the City of Orange were not admitted into this action, it would, of course, not be bound by the final adjudication herein and it could at some future time proceed independently to enforce by various means, including injunction, its zoning ordinance where violated. A judgment in favor of the defendants holding that the zoning ordinance does not apply or has not been violated would be final as between the original parties but would not settle the question as against the municipality if it were absent from the cause. The successful defendants might well have to re-litigate the question at some future time and with perhaps a contrary result. This would make for multiplicity of action, additional expense and the hazard of conflicting results. These disadvantages are all avoided by allowing the municipality to come in, whereby all the parties will stand concluded by the final result in the present action.
It is argued that the municipality could not maintain an action for injunction since such action would be to restrain the commission of a criminal act, something beyond the equitable jurisdiction. Whatever may have been the law on that question in this State, the matter is now settled. The question was finally decided by our court of last resort in the case of Mayor, &c., of Alpine Borough v. Brewster, 7 N.J. 42 (April, 1951). As was pointed out in that case, "the remedial process of injunction is invoked in aid of the zoning power, not to enforce the law's penalties for crime. It is a civil remedy not punitive in essence; its employment does not *80 afford absolution from criminal responsibility, if such there be. It is a means of serving the common interest in matters related to the social well-being, order and economy of the community. There is in this procedure no assumption of jurisdiction over criminal offenses for their prosecution and punishment in the enforcement of the laws denouncing crime and penal transgressions." Elsewhere in the cited case it was stated that Chancery's jurisdiction to grant injunctive relief "may also be invoked to consummate zoning as a common civil right, quite apart from the punishment of what may also be a criminal offense."
It being settled that the municipality may maintain an injunction suit in respect of its zoning ordinance, the question is raised whether the plaintiffs, as individuals, may maintain this action of like nature. The precise point was considered by the court in Stokes v. Jenkins, 107 N.J. Eq. 318 (Ch. 1930). There the court sustained the suit brought by an individual to restrain the violation of a municipal zoning ordinance. The reasoning of Vice-Chancellor Fielder in that case is applicable here and is adopted. But for the zoning ordinance of the City of Orange these plaintiffs could freely use their property for any lawful purpose. The zoning ordinance restricts that use to one-family dwellings. The legal support for such restriction is the like restriction imposed on all other property within the zone. A legal consideration is found in the fact that the benefit of the zoning restriction is furnished equally to all the property owners embraced by the restriction. "If, therefore, the restrictions cease to be universal in their application, the theory of equal benefit fails. The benefits which the complainants were to acquire were through rights in the nature of an easement" on the other lands within the zone. The benefits furnished by the zoning restriction promote the plaintiffs' health and general welfare by giving them such privacy and other advantages as ordinarily flow from living in a less congested area and, necessarily, such benefits increase the value of the plaintiffs' property. If other property owners within the same *81 zone and subject to the same zoning restriction be permitted to violate that restriction, the plaintiffs nonetheless continue bound by the restriction while suffering deprivation in the enjoyment of their property and impairment in the economic value thereof. These are special damages for which even a proceeding by the municipality to enforce a penalty against the violators will furnish no adequate relief to the injured plaintiffs. If property owners adversely affected by such a violation are not free to restrain such violation, they remain entirely helpless if the municipality is inert and takes no action itself. In the cited case the court said: "I conclude that the complainants are entitled to relief from this court by injunction, to place them in the enjoyment of the benefits, peculiar to themselves and their property, which the zoning ordinance in question conferred on them." I, too, so hold.
I am aware of the decision of the former Court of Chancery in Dinkins v. Kip, 110 N.J. Eq. 486 (1932), and of the decision of the former Court of Errors and Appeals in Srager v. Mintz, 109 N.J. Eq. 544 (1931). Both cases stand for the holding that a court of equity will not enforce municipal ordinances by injunction unless the act sought to be restrained is a nuisance. There the violation of the zoning ordinances was not deemed such nuisance as to entitle the individual plaintiff to maintain a suit for injunction, the theory being that a zoning violation did not constitute a public nuisance. I am, however, bound by the most recent decision of our new Supreme Court in Mayor, &c., of Alpine Borough v. Brewster, supra. It is the last word on the subject, and if the last two cited cases (Dinkins v. Kip and Srager v. Mintz) are deemed to be in conflict with it, their authority must be considered as overruled. In the Brewster case Mr. Justice Heher stated that "anything that unduly interferes with the exercise of the common right may be declared a nuisance and rendered abatable as such and otherwise remediable." The tract here in question consists of 65 large lots and covers a considerable number of acres. The rights conferred by the applicable zoning restrictions are *82 rights common to all those who presently own or in the future will own those 65 lots. The use of one of those lots to house many students in what is to be both a school and dormitory is something which, in the language of the Brewster case, unduly interferes with the exercise of the common right. That common right is that the entire zone continue as a place for the erection and use of one-family houses.
The motions for summary judgment will be denied. The City of Orange will be permitted to intervene by answer to be filed and served within five days from the signing of the order permitting intervention. All other parties in the action may have ten days within which to plead with respect to that answer, such ten-day period to be computed from the date of service upon them of a copy of the answer. Present order in accordance with these views.