142 So.2d 489 (1962)
W. B. WRIGHT et al., Plaintiffs-Appellees,
v.
Anthony P. DeFATTA et al., Defendants-Appellant-Appellee.
No. 9751.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1962.
Rehearing Denied July 5, 1962.
*490 Ferdinand A. Cashio, Shreveport, for appellant.
Charles M. Peters, Roy B. Tuck, Jr., and Hugh T. Ward, Shreveport, for plaintiffs-appellees.
J. N. Marcantel and J. Bennett Johnston, Jr., Shreveport, for defendant-appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
BOLIN, Judge.
This is an appeal from a judgment granted in favor of 12 individual property owners residing in Shreveport, Louisiana, permanently enjoining Anthony P. DeFatta from placing an excessive number of Negro dwellings on certain lots contrary to the Municipal Comprehensive Zoning Ordinance, and ordering the removal by the defendant, DeFatta, of such houses.
This matter was extensively litigated in the lower court on the rule for the preliminary injunction; and after various exceptions were disposed of, the preliminary injunction was granted in favor of plaintiffs. From this judgment, defendants appealed to this court. After considering the record which consisted of two volumes of pleadings and evidence, this court concluded the Metropolitan Zoning Commission of the City of Shreveport had exceeded its authority in granting DeFatta permission to erect the houses on the lots in violation of the Municipal Zoning Ordinance, and affirmed the judgment granting the preliminary injunction (129 So.2d 614). From this ruling, defendant applied to the Supreme Court for writs which were refused. The case was then tried in the lower court on the question of the issuance of a permanent injunction. During the course of the latter trial, all litigants filed various exceptions which were overruled, and the matter was tried on the merits. By stipulation, the case was submitted on the evidence previously adduced; and the lower court rendered judgment in favor of plaintiffs for a permanent injunction, from which, DeFatta has appealed suspensively to this court. We will not discuss the facts in more detail as they are fully set forth in our previous opinion referred to, supra.
The only issue before us on the first appeal was whether the decision rendered by the Shreveport Metropolitan Zoning Board of Appeals as affirmed by the City Council, granting DeFatta the right to locate the excessive number of dwellings on the property, was ultra vires and contrary to the provisions of the State Enabling Act and the Shreveport Comprehensive Zoning Ordinance. By our decision, we concluded such permission was illegal, and this question has therefore been foreclosed by our former opinion and is not at issue in the present case.
The lower court's ruling on the various exceptions as well as the merits has presented several questions to us on this appeal which we will separately list and discuss. We do state in fairness to able counsel for all parties, that a greater number of issues are listed in the excellent briefs, but many of these questions are overlapping and may be generally classified in three broad areas.
It is first contended by appellant that the Comprehensive Zoning Ordinance in question is null and void. This argument is *491 predicated on the contention that when the ordinance was enacted, certain mandatory prerequisites of the State Enabling Act were not complied with. More particularly it is contended Louisiana Act Number 34 of 1954 requires a copy of the Master Plan and zoning plan element to be filed and recorded in the office of the Clerk of Court; that such was not done in the instant case; and that such failure rendered the entire municipal zoning ordinance enacted pursuant to the State Enabling Act completely null and void.
It is appellant's position that Section 10 of the enabling legislation (Act 34 of 1954) makes the zoning ordinance a part of the master plan; and that Section 12 of the act requires recordation of the ordinance and map before the ordinance can become effective. In this connection, it is stipulated that no map or master plan was recorded until the day before the trial of this case. Assuming for purposes of argument that the ordinance is a part of the master plan referred to in Section 12 as contended by appellant, his position still remains untenable. The pertinent part of the act provides:
"* * * a copy of the plan or part thereof shall be certified to each of the following: * * * the Clerk of Court and Recorder of Caddo Parish, who shall record such plan or part thereof on the conveyance records of Caddo Parish. The plan or part thereof shall take effect after the date it shall have been adopted by the City Council * * *." (Emphasis supplied.)
The above language makes it clear that recordation is directory only, for the plan or part thereof takes effect when "adopted by the City Council", and not when recorded.
Appellant cites State ex rel. Holcombe v. City of Lake Charles, 175 La. 803, 144 So. 502 (1932) in support of his position that failure to record is fatal to the ordinance. The case is not controlling because the facts are different. In that case the enabling legislation provided "* * * that this law (zoning ordinance) shall not become effective in any town, city, or village, or in any parish, where such establishment is to be located outside of any city, town, or village until an ordinance of the governing authority carrying the same into effect shall have been passed, making the same the law, `and only then after publication so to do has been published in the official journal of the Parish for not less than thirty days.'" The ordinance was properly held invalid because there had been no publication. In the present case, the statute provides that the plan shall become effective upon adoption.
Appellant also cites Beauvais v. D. C. Hall Transport, Inc. (La.App. 2 Cir., 1950) 49 So.2d 44. There the ordinance under attack was enacted under a state enabling act which provided:
"* * * However, no regulation or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. * * *" Act No. 240 of 1926, § 4.
It is obvious that the provision of the enabling act bears no similarity to the one in the instant case.
The appellant next contends the doctrine of public registry is applicable to the zoning ordinance. This question is entirely separate and apart from whether the enabling act required the recordation of any portion of the ordinance. In amending his answer, appellant alleged "the said respondent purchased the property, the use of which is allegedly in violation of the Comprehensive Zoning Ordinance of the City of Shreveport, and as well, made such use of the same as is herein complained of, on the faith of and reliance upon the public records and under the law of public registry * * *"
*492 This question is not difficult to resolve when the nature and character of the instrument allegedly relied upon is analyzed. The written document relied upon herein is a legislative act of the City of Shreveport. Does the fact that this ordinance affects immovable property subject it to the provisions of our statutes on public registry?
Appellant relies on LSA-R.S. 9:2721 which provides:
"No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry * * *."
It is clear that the purpose of the law of registry is to allow persons to deal with immovable property without going beyond the records to discover hidden defects or equities imposed upon the property by private individuals. The public policy of this state, as enunciated in many cases is to encourage the commercial flow of title and rights to immovable property. Registry is, of course, the method of giving notice to third parties of transactions affecting realty. This doctrine is clearly not applicable to a municipal ordinance. There are no "third parties" to such an ordinance. To the contrary, all parties are bound by the provisions of a legislative act which has been legally adopted.
The final and most serious issue raised by appellant is that in order to enjoin the defendant from violating the municipal ordinance, plaintiffs must prove defendant's acts would cause them specific damages. The record reflects that this question was first raised during the trial for a preliminary injunction by means of an exception of vagueness which was aimed at requiring plaintiffs to more specifically allege their damages. In compliance with this exception, the court ordered plaintiffs to so amend their petition. However, the lower court ultimately decided that proof of specific injuries was not necessary in the instant case because the violation of the municipal ordinance was in the nature of a public nuisance or nuisance per se.
The question of what type of damage must be shown in order to enjoin the violation of a municipal ordinance has been before our courts on many occasions. We think the basic rule is well stated in 166 A.L.R. 659, 661, as follows:
"Louisiana clearly adheres to the theory that the violation of a zoning ordinance constitutes a nuisance per se and offers the excellent reason for such holding that the use of property in violation of a zoning ordinance is such a defiance of municipal government that it must be considered as a nuisance in law. Thus, where a zoning ordinance forbade, under penalty, any business establishment in a described residence district, conducting a retail business in ladies' wearing apparel in such a district was held in New Orleans v. Liberty Shop (1924) 157 La. 26, 101 So. 798, 40 A.L.R. 1136, to be a public nuisance entitling the municipality to a remedy by injunction. Stating that the establishment could hardly be regarded as a nuisance anywhere except in an exclusive neighborhood where business establishments are proscribed by statute or ordinance, the court said that in such a neighborhood any business establishment would constitute a public nuisance because, if for no other reason, it was an example of defiance of the municipal government. Disposing of the argument that the ordinance did not declare its violation to be a public nuisance the court said: `The zoning ordinance in this case does not, in terms, declare that the proscribed business establishment shall be deemed a nuisance. But the declaration that the establishment is unlawful, and that the proprietor shall, *493 on conviction, be punished by fine or imprisonment, etc., is the same as to say that the establishment shall be deemed a nuisance. Surely it would add nothing to the meaning or purport of such an ordinance, if in terms it declared that a business establishment in the residence district should be deemed a nuisance.'
"Basing its decision on New Orleans v. Liberty Shop (La.) supra, the court in State ex rel. Dema Realty Co. v. McDonald (1929) 168 La. 172, 121 So. 613 (writ of certiorari denied in (1929) 280 U.S. 556 [50 S.Ct. 16], 74 L.Ed. 612), reiterated the rule by holding that a retail grocery store continued in violation of a zoning ordinance was in fact and in law a public nuisance and that the public authorities were vested with power to cause such nuisance to be abated.
"And by way of dictum it was said in Moss v. Burke & Trotti (1941) 198 La. 76, 3 So.2d 281, that the location of a business within a zone set apart by ordinance exclusively for homes would be an unlawful location, and subject to abatement as a nuisance per se."
We also note the following in the case of City of New Orleans v. Lafon (La.App. Orleans 1952) 61 So.2d 270:
"In this case, as in that, (referring to the Liberty Shop case, supra), the purpose of the suit was to enjoin the violation of the zoning law, and, as a matter of fact, the violation of such zoning law is a nuisance `per se' as the Supreme Court so stated in that case, saying that the declaration that an establishment is unlawful, since it is in violation of a zoning law, `is the same as to say that the establishment shall be deemed a nuisance.'"
The difference between a nuisance per se and a nuisance in fact is discussed at some length in 39 American Jurisprudence "Nuisance", Section 11, Page 289:
"Nuisances are classified as nuisances per se and nuisances in fact, or per accidens. Of course, a thing cannot be a nuisance of either kind unless it possesses the characteristics or qualities necessary to bring it within the general definition of a nuisance. The responsibility for a nuisance of either sort is the same.
"A nuisance per se is generally defined as an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Other definitions are: any act or omission or use of property or thing which is of itself hurtful to the health, tranquillity, or morals, or which outrages the decency of the community; that which cannot be so conducted or maintained as to be lawfully carried on or permitted to exist; and, as related to private persons, an act or use of property of a continuing nature, offensive to and legally injurious to health and property, or both * * *.
"The difference between nuisance per se and a nuisance in fact lies in the proof, not in the remedy. In the case of a nuisance per se, the thing becomes a nuisance as a matter of law. Its existence need only be proved in any locality, and the right to relief is established by averment and proof of the mere act. * * *"
In opposition to this line of authority to the effect that a violation of a zoning ordinance is a nuisance per se, the appellant cites a recent decision of this court, Hutson v. Continental Oil Company (La. App. 2 Cir., 1962) 136 So.2d 714. This suit was instituted by property owners to enjoin an alleged violation of the zoning ordinance in the erection and operation of a service station. It is true this court held in that case plaintiffs were not entitled to injunctive relief because they *494 had shown no specific injury. However, the factual situation in that case must be clearly kept in mind. In the Hutson case, the violation complained of was that the defendant had removed a portion of a screening wall and cut a curb in violation of the ordinance. The setback requirement was also violated by the defendant by a distance of only four feet.
It is made abundantly clear in the Hutson decision that the reason plaintiffs' demands were rejected was because of the minor nature of the violations involved. This court distinguished the Liberty Shop and Lafon cases on this basis. In the course of its opinion, the court noted:
"The case before us does not involve a violation of any such nature as could be considered to constitute a nuisance per se, but apparently concerns only minor violations of municipal ordinances."
We think the concluding paragraph of the cited case correctly summarizes the law is follows:
"A corollary conclusion is that individuals are not vested with authority to enforce such statutory regulations, even through the civil action for injunctive relief, except upon a showing that the violation constitutes, (a) a nuisance per se, or what may be designated as a public nuisance, or (b) a nuisance that has caused some nature of damage to the complainants by reason of which they are entitled to its abatement. No evidence of the existence of either of the above two requirements has been established in the instant case."
Sharply contrasted to the facts of the Hutson case is the situation in the instant case. The appellant has crowded an excessive number of negro tenant houses in an extremely small area. As a matter of fact, we stated in our former opinion:
"Thus, it can readily be seen that the minimum building site area as provided by the ordinance has been grossly violated."
For the foregoing reasons, we conclude the violations in the instant case constituted a nuisance per se, and as such, the lower court was correct in not requiring the showing of any specific damages.
For the reasons stated, the judgment of the lower court is affirmed at appellant's cost.
Affirmed.