152 So.2d 10

**W. B. WRIGHT et al.**

**v.**

**Anthony P. DeFATTA et al.**

No. 46322.

March 25, 1963.

Rehearing Denied April 29, 1963.

Ferdinand A. Cashio, Shreveport, for relator. .

J. N. Marcantel, J. Bennett Johnston, Jr., John L. Schober, Jr., Shreveport, for defendant-appellee, City of Shreveport.

Peters, Tuck & Ward, Shreveport, for respondents, W. B. Wright and others.

SUMMERS, Justice.

Twelve individual property owners seek an injunction against Anthony P. DeFatta, the owner of adjacent or neighboring property, to abate the violation of a comprehensive zoning ordinance of the city of Shreveport. Alternatively, the plaintiffs sought to compel the city of Shreveport, by mandamus, to take appropriate action to abate the violation. The suit's object is to compel the removal of twelve single-family tenant dwellings installed since enactment of the zoning ordinance on eight city lots owned by defendant, seven dwellings having been situated on these lots prior to enactment of the ordinance. It was contended that the twelve additional houses violate the space and yard requirements of the zoning ordinance of the city of Shreveport.

A preliminary injunction was issued by the trial court, based upon a finding that defendant's conduct in placing the twelve additional houses on his property was a gross violation of the ordinance. In so doing the court rejected the contention that defendant's action in placing seven of the additional houses on the property in question was approved by the city as an exception to the restrictions in the ordinance, holding that the City Council, Zoning Administrator and Zoning Board of Appeals were without authority to grant such an exception. Defendant, DeFatta, appealed to the Court of Appeal, Second Circuit. That court affirmed the order for the issuance of the preliminary injunction, holding that the zoning officials were without authority to grant the exception to DeFatta, (129 So.2d 614). Thereafter a trial was had on the permanent injunction. That trial also resulted in a judgment in favor of plaintiffs permanently enjoining defendant, DeFatta, from the violation of the zoning ordinance. An appeal was again taken by DeFatta to the Court of Appeal, Second Circuit, where three main issues were presented for adjudication. It was contended by DeFatta

on this appeal that the zoning ordinance was null and void; that the doctrine of public registry was applicable to the zoning ordinances; and that, in order to enjoin the defendant from violating the comprehensive zoning ordinance, plaintiffs must prove defendant's acts would cause them specific damage. The Court of Appeal rejected the first two contentions, finding the ordinance to be valid and the law of public registry inapplicable thereto. On the third issue it concluded that the violations complained of constituted a nuisance per se and, therefore, it was not required that plaintiffs show any specific damages to themselves to be entitled to injunctive relief. (142 So.2d 489).

On defendant's application to this court for review of the last judgment of the Court of Appeal, we granted writs but limited our review to the latter contention, or "whether neighboring property owners are entitled to injunctive relief without a showing of specific damages."

The question thus presented for review was first raised during the trial for a preliminary injunction by means of an exception of vagueness directed at the failure of plaintiffs to allege what specific damage they would suffer. The trial court sustained the exception and ordered plaintiffs to amend their petition, and set forth the specific damage to them resulting from the violation.

The twelve additional houses constituting the violation are used and are to be occupied by Negro tenants of DeFatta. In their amendment plaintiffs alleged that they were damaged by the enlargement of a slum area for colored occupancy, and, through acts of the defendant, overcrowded, unsanitary conditions existed. They alleged that the overcrowded slum-type occupancy results in attracting numerous Negroes into the neighborhood; and as a result they wander near and around the residences of plaintiffs through the night hours, causing fear and apprehension on the part of plaintiffs and greatly damaging their right to peaceful enjoyment of their homes which, they alleged, the zoning ordinance in part was enacted to protect.

The amendment further sets forth that the overcrowded slum conditions created by defendant attract undesirables to the premises occupied by defendant's tenants, who drink and carouse at night on defendant's property. As a result there is disorderly, loud and unruly conduct during the night hours, as well as occasional fights and the use of loud and profane language, causing apprehension on the part of plaintiffs, thereby further damaging their right to the peaceful enjoyment of their property.

By this amendment to the plaintiffs' petition it is further alleged that the residential neighborhood in question, and in which plaintiffs reside in the immediate vicinity

of defendant's property, is made up in large part of retired persons, including some of the plaintiffs. They have owned their homes and resided in this neighborhood for many years and so it is not economically possible or socially desirable for them to leave this neighborhood. The amendment to the petition sets forth that the overcrowded slum conditions thus created cannot be contained within the confines of defendant's property. As a consequence hazardous and undesirable conditions are created for plaintiffs' children and their neighbors insofar as play and free movement within the neighborhood are concerned, further damaging plaintiffs' right to the enjoyment of their property under the zoning law.

In addition to the plaintiffs' right to be free from damage to their peaceful use and enjoyment of their property, they further assert their right as citizens, property owners and taxpayers of the city to enforce the provisions of the zoning ordinance and to maintain the residential classification applying to their neighborhood. They allege the violation of the ordinance constitutes a public nuisance which entitles them to enforce the ordinance enacted for their protection. These allegations lead to the conclusion, and are sufficient to support proof, that plaintiffs have been, and will be, specifically damaged in their property. Carbajal v. Vivien Ice Co., 158 La. 784, 104 So. 715, 41 A.L.R. 623 (1925).

Although, upon the trial of the preliminary injunction, the plaintiffs were required to amend their petition, which they did as we have outlined, the lower court ultimately decided that proof of specific damages was not necessary because the obvious violation of the municipal ordinance was in the nature of a public nuisance or nuisance per se. Upon the trial of the permanent injunction the lower court, though receiving evidence on the question of specific damage to plaintiffs, reiterated the ruling it had previously expressed on this issue. This holding was affirmed by the Court of Appeal.

Essentially we are concerned in this review with the application of the provisions for abating violations of zoning ordinances available to neighboring property owners as contained in the pertinent statute and ordinance governing the facts of this case.

The first of those, Act 34 of the Louisiana Legislature for the year 1954, is the act authorizing enactment of the Comprehensive Zoning Ordinance of the city of Shreveport. That act provides inter alia that the City Council may provide for the enforcement of any ordinance enacted pursuant thereto and that:

"* * * any adjacent or neighboring property owner who would be specifically damaged by such violation, may, in addition to other remedies, institute injunction, mandamus, or other appro-

*priate action or proceeding to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance, or use, or to correct or abate such violation, or to prevent the occupancy of such building, structure or land.*" (Emphasis by the court.)

On the basis of the authority contained in the foregoing statute the city of Shreveport enacted its Comprehensive Zoning Ordinance. The pertinent section, being in substantial conformity with the foregoing act, reads as follows:

" * * * The imposition of any penalty hereunder shall not preclude the Zoning Administrator, municipal * * counsel, * * * or other appropriate authority of the municipality * * * *or any adjacent or neighboring property owners who would be specifically damaged by such violation from instituting injunction, mandamus or other appropriate action or proceeding to prevent such unlawful erection, construction, reconstruction, alteration, conversion, or use, or to prevent the occupancy of such building, structure, or land.*" Ordinance No. 184 of 1957 of the City of Shreveport, Section 7.

We find the foregoing act and ordinance to be embodiments of the general rule of law governing the right to injunctive relief by neighboring property owners for the violation of a zoning ordinance; for, gener-

ally, it can be said that the cases permit an individual to seek, and be granted, an injunction against the violation of a zoning ordinance, if, by a violation of the zoning law, the citizen suffers some special damage peculiar to himself. In 2 Yokley, Zoning Law and Practice, Sec. 192 (2d ed.), it is declared that such a rule is sound in principle and certainly the better authorities sustain this view of the right of an individual to injunctive relief. If this is the general rule established by the jurisprudence, surely, when that rule is embodied in a statute and ordinance enacted pursuant thereto, there can be little doubt of the compulsion this court is under to apply that rule.

■■ Furthermore, in construing a definite procedural provision such as that which is under consideration, the law obliges the courts to adhere to the text and not import argumentative qualifications from broad, unexpressed claims of policy. LSA–Civil Code, article 13; Utah Junk Co. v. Porter, 328 U.S. 39, 66 S.Ct. 889, 90 L. Ed. 1071 (1946). And the proposition is well founded in the law of this state that zoning laws being in derogation of private ownership must be strictly construed in favor of the property owner. Carrere v. Orleans Club, 214 La. 303, 37 So.2d 715 (1948).

■■ Inasmuch as a strict construction of the statutory remedy is proper under

these circumstances, we must consider the remedy enumerated in the statute to be the only remedy authorized by the legislature— that remedy, then, is exclusive; and the statute permits the municipality "or any adjacent or neighboring property owners who would be specifically damaged" by the violation to obtain its abatement. It is within the framework of this quoted language that plaintiffs must fall to be entitled to the redress which they seek. That they be "specifically damaged" by the violation is a prerequisite to injunctive relief by neighboring property owners. This being so, we find that any concept which concerns the abatement of nuisances is irrelevant for the statutory remedy is exclusive. What is sought to be accomplished by the injunction is to abate a violation of the ordinance, nothing more. A suit to abate a nuisance is not involved.

Thus, the Court of Appeal's finding that the violation was a nuisance per se, and it was therefore unnecessary that damages to the plaintiff be shown, disregards the plain controlling statutory language that the plaintiffs be "specifically damaged" and is an improper basis for its decision.

▬ The issue, therefore, is whether the plaintiffs have been or will be specifically damaged, and to determine this we must look to the evidence offered in support of the allegations of damage to the plaintiffs.

The violation that creates the damage, it is said, consists of DeFatta's placing seven "shotgun" type tenant houses upon seven lots, measuring 40 feet by 140 feet and having 5,600 square feet per lot and one additional adjoining lot measuring 25 feet by 140 feet, or 3,500 square feet, when those lots already contained seven houses. To the extent of these seven additional houses the Zoning Administrator has approved his action. However, five other houses have been placed upon these lots and remain there, though unoccupied and without the approval of the Zoning Administrator. Thus, it may be seen that plaintiffs' complaint is that fourteen houses (nineteen including those unauthorized) are located on the lots, back to back, and in very close proximity to one another. A proper regard for the zoning restriction would only permit six houses upon the property, for the minimum building site area for a one-family dwelling in the R–3 residential district is 7,200 feet; and it is required that the front yard be 30 feet, the side yard five feet and the rear yard 25 feet.[1].

The placement of the houses, other than those situated on the lots prior to enactment of the zoning ordinance, has been held to

1. It has been noted that seven houses were located on DeFatta's lots prior to enactment of the zoning ordinance and no complaint is made with regard to these seven houses, only those houses placed on the DeFatta lots subsequent to the enactment of the zoning ordinance are involved.

be a "gross" violation of the zoning provision which classifies the area as an R–3 multiple family residential district. This is clearly a proper result for the regulations pertaining to the R–3 multiple family residential district are stated to be: "to protect the residential character of the areas by prohibiting all commercial activities; to encourage a suitable neighborhood environment for family life by including among the permitted uses such facilities as schools and churches; *to prevent overcrowding of the land* by requiring a certain minimum building site area for each dwelling unit."

In the effort to establish that they were specifically damaged, two of the plaintiffs testified and it was stipulated that the other ten plaintiffs would testify substantially in accordance with that testimony.

Walter B. Wright, one of the plaintiffs, testified that for about twenty years he had lived in the neighborhood, approximately two blocks north of the DeFatta property, and that he owned his home. He has had occasion to observe regularly the DeFatta property and the tenants occupying the houses. He has noticed that there are quite a few more people, including school children, coming and going in the neighborhood since the houses were moved onto the DeFatta property and these additional people come from the DeFatta property. He complains that the condition is a disturbance in that these strange people trafficking

back and forth near his home at night make him feel uneasy. As a result he locks his doors at night and has increased his vigilance over his property. His testimony further disclosed that the property was "terribly messy."

Mr. Charles Henry Reed testified that he has lived about two and a half blocks from the DeFatta property since 1942; that he owns his home and has a family consisting of his wife and two boys. He is familiar with the DeFatta property and has occasion to observe it daily. The church he attends is located on grounds adjoining the DeFatta property. From his testimony we learn that the movement of the additional houses onto the DeFatta property has brought more people into the neighborhood, there are "droves of kids" in that area, and a number of the DeFatta tenants go about the neighborhood in a "drunken condition." On one occasion he observed an intoxicated couple who lived on the DeFatta property cursing one another on the street. Whiskey bottles have been found on the church grounds. Occupants of the DeFatta property were seen on the porch of one of the tenant dwellings cursing one another and throwing brick bats at the house. It is his belief that a slum is being created in his neighborhood, and further, that his property is "defaced"; he would no longer buy it at this time and it is *no longer worth nearly as much money as it was before DeFatta's*

*tenants moved in.* Mr. Reed testified that the conditions have caused him to put locks on his doors, which he did not have before, because there are so many Negroes loafing on the streets.

As heretofore stated, it was stipulated that the remainder of the plaintiffs, if called to testify as witnesses, would testify to general conditions to the same general effect as Mr. Wright and Mr. Reed. We take this to mean that at least half of them—five other plaintiffs—would testify, as Mr. Reed did, that the value of their property was adversely affected by the zoning law violation. There was no objection to this testimony nor was any contradictory evidence offered.

This evidence establishes that the property of some of the plaintiffs has depreciated—a result which would seem logically to follow from such conditions in a residential neighborhood. It is clear that these conditions are a result of "overcrowding of the land" in such a manner that the overcrowding has been held to be a "gross" violation of the ordinance. This depreciation, then, is a showing by some of the neighboring property owners that they are and will be "specifically damaged" by the violation.

We do not consider it to be imperative that the damage be determinable in a fixed amount of money. It suffices to satisfy the terms of the ordinance that the damage be significant, and that plaintiffs would be materially and adversely affected in the enjoyment of their homes. The evidence here satisfies this requirement and plaintiffs are entitled to the injunction they seek. Guyton v. Yancey, 240 La. 794, 125 So.2d 365 (1960); Yanow v. Seven Oaks Park, Inc., 15 N.J.Super. 73, 83 A.2d 28 (1951); Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n, Mo., 265 S.W.2d 374 (1954); 2 Yokley, Zoning Law and Practice, Sec. 192 (2d ed.).[2]

To allow the violation complained of to continue unabated would be to tear asunder the whole fabric of municipal zoning and would completely thwart its purpose here, which is to protect the residential character of the area, prevent overcrowding of the land, and avoid excessive population density.

Though we do not agree with the rationale of the decision of the Court of Appeal on the issue reviewed, nonetheless we have reached the same result and for the reasons herein expressed we affirm the judgment under review.

**2.** Because we have reached this conclusion it is unnecessary to pass upon plaintiffs' alternative demand.