BARNETTE, Judge.
This is a suit brought by a residential property owner against the owners of adjacent residential property in a “B-Two Family District” as defined by the Comprehensive Zoning Ordinance of the City of New Orleans to enjoin the alleged nonconforming use of defendants’ property as a six-apartment dwelling. The defense is based upon a preexisting nonconforming use status enjoyed by defendants’ property. The plaintiff’s contention is that the nonconforming use status claimed has been lost by reason of the “attic apartment” in defendants’ property having been vacant for a period in excess of the six months allowed by the ordinance. From a judgment in favor of de *129 fendants rejecting plaintiff’s demands and dismissing her suit, plaintiff has appealed.
The issue of law is one of interpretation of the applicable provisions of the Comprehensive Zoning Ordinance of the City of New Orleans, and there appears to be little, if any, dispute between the parties of the pertinent jurisprudence on the subject. We do not have the benefit of written reasons for judgment, but it appears from the record that the trial judge rejected plaintiff’s demands because of her failure to prove that the apartment in question had been vacant continuously for a period of six months within the meaning of the ordinance.
Briefly, the undisputed facts are: Plaintiff-appellant owns the property designated by municipal number 2300 Jefferson Avenue. Defendants-appellees own the property at 2314 Jefferson Avenue. The lots are contiguous; and defendants’ multiple occupancy house is located on that portion of the lot farthest from plaintiff’s house, thus leaving a space of 25 feet between defendants’ house and the common property line. From sometime prior to 1930, while owned by defendants’ ancestors in title, the property in question was used as a six-apartment dwelling. It acquired a preexisting nonconforming use status in 1953 when the Comprehensive Zoning Ordinance of the City of New Orleans was adopted. The property in question was purchased by defendants on August 16, 1961. At that time there were five apartments on the first two floors of the house and a sixth apartment referred to throughout these proceedings as the “attic apartment” on the third floor. The attic apartment had been vacant about a month when defendants bought the property and remained unoccupied as a dwelling unit until defendant Hughes J. de la Vergne II occupied it for his personal residence on June 9, 1965.
There is no question that the five apartments in the first and second floors of the building have been continuously occupied or undergoing repairs since defendants acquired title and have maintained their nonconforming use status. Plaintiff, however, contends that the defendants have lost the right to claim nonconforming use status for the attic apartment, and this is the alleged violation which is sought to be enjoined. The question of a preliminary injunction was moot when the case was called for trial, since the apartment in question had already been occupied.
Exceptions of prematurity, no right of action and no cause of action were filed. Apparently the trial judge found it unnecessary to rule specifically on the exceptions after hearing the evidence and finding defendants entitled to judgment on the merits. The exceptions were predicated on the allegation that plaintiff did not exhaust her remedies through administrative channels afforded by the Comprehensive Zoning Ordinance. As did the trial court, we pretermit a determination of the questions raised by the exceptions for the reason that, since the case has been fully tried on the merits, we prefer to dispose of the issues with finality, which, in this case, is judicially feasible. Trasatti v. Jeffer, 86 So.2d 230 (La.App.Orleans 1956); Ford v. Baird Bros., 161 So. 45 (La.App.2d Cir. 1935).
Unquestionably the apartment building at 2314 Jefferson Avenue has been greatly improved in appearance and utility by the extensive renovations made by defendants since their acquisition of the property. Apartments which formerly rented in the $50-per-month range are now $165 per month, thus indicating the extensiveness of the improvements and desirability of the apartments for residential purposes. Plaintiff’s chief complaint is that with the occupancy of the attic apartment, making six instead of five, the parking of cars on the space adjacent to her property will be increased with attendant increase of noise and traffic from the additional number of people residing in the building.
*130 Whether or not plaintiff has shown that she has been "specifically damaged” to entitle her to the injunctive relief sought under the authority of Wright v. DeFatta, 244 La. 251, 152 So.2d 10 (1963), we think unnecessary to decide. It is our opinion that defendants’ property has not lost its nonconforming use status by reason of the continuous vacancy of the attic apartment for a period of six months within the meaning of the ordinance.
The pertinent portions of Ordinance No. 18,565, adopted July 3, 1953, and known as the Comprehensive Zoning Ordinance of the City of New Orleans, are as follows:
"ARTICLE XXIV — Non-Conforming Uses
“A non-conforming use of a building or portion thereof or land, which use existed lawfully at the time of adoption of this Ordinance and which use remains nonconforming under this Ordinance, and any use which will become non-conforming at the time this Ordinance or any subsequent amendment thereto is adopted may be continued or changed subject to the following regulations:
* * * * * *
2. No building or portion thereof or land used in whole or in part for non-conforming purposes according to the provisions of this Ordinance, which hereafter becomes and remains vacant for a continuous period of six (6) calendar months shall again be used except in conformity with the regulations of the district in which such building or land is situated. Neither the intention of the owner nor that of anybody else to use a building or lot or part of either for any nonconforming use, nor the fact that said building or lot or part of either may have been used by a makeshift or pretended non-conforming use shall be taken into consideration in interpreting and construing the word 'vacant’ as used in this Ordinance; * * * ”
The uniform practice of the Department of Safety and Permits of the City of New Orleans is to suspend the six-month vacancy clause during the course of repairs and renovations of a building when such repairs are being carried out under valid building permits under supervision and inspection of the City Building Inspector. Apparently plaintiff has made no attack on the interpretation of the ordinance by the administrative authorities, nor does she complain of the long-continued practice of suspending the running of the six-month period during repairs. Her contention raises the factual question of whether or not the repairs to the attic apartment were continuous during the more than three years consumed in completing the project.
James P. Ellerbusch, Acting Chief Building Inspector, testified that at all times after the issuance of the first permit for the repairs of the property in question a valid permit was in effect. He further testified that if work is not begun within six months of the issuance of a permit, or if it has been discontinued for a period of six months, the City notifies the person who secured the permit that it will consider the work abandoned and the permit expired if the work is not resumed within a given number of days.
By affidavit dated October 19, 1961, Mr. de la Vergne declared the legal nonconforming use status of the property to the City. Based on this affidavit, permits for “structural repairs” were issued October 20, 1961, November 26, 1963, and December 10, 1964. There is evidence that plaintiff’s attorney complained of loss of nonconforming use status and requested an inspection of the premises in question to determine if the zoning laws had been violated. An inspection was made under the direction of the Chief Building Inspector, and the inspecting official recommended that a new affidavit be required of the owner as proof of the continued noncon *131 forming use status. No such requirement was made. Apparently the Chief Building Inspector was satisfied that the original affidavit was sufficient; that there were no violations; and that the repairs were continuing in good faith. This conclusion is supported by the testimony of the witnesses.
It does seem that an unreasonably long time was required for the repairs notwithstanding that they were very extensive and involved every part of the house and all aspects of repair — structural, electrical, plumbing, painting, and decorating. Apparently the completion of the attic apartment was left to the last; and, during the progress of the work on the apartments below, the attic space was used for storage of materials.
Plaintiff contends that the attic apartment was a separate “portion” of the building and that, since it was not actually undergoing repairs for the entire period of more than three years consumed in the renovation project, it has lost its nonconforming use status by reason of its vacancy as a dwelling unit for more than six months. We cannot distinguish the attic apartment as being a “portion” independent and apart from the remainder of the house. Its occupancy as a dwelling unit during the extensive repairs to the house was rendered impractical, if not impossible. Its use for storing materials used in the apartments below and the necessity of free access to electrical wiring in the attic, serving the rest of the house, in our opinion thoroughly justified the owners’ decision to leave its renovation to the last. The renovation project was one continuous operation affecting the entire house.
One of the co-owners and defendants identified a list of checks showing dates and amounts paid to the carpenter-contractor in charge of the repairs and renovations from November 13, 1961, to December 4, 1964, and testified of other payments not listed from that date. He testified that this was an “economy” job by the owners as a sort of family project with an uncle of the co-owners, Jules de la Vergne, as architect, which he said accounted for the long time consumed in completion of the project. We find no error in the judgment of the trial court finding as a fact that there was no lapse of six months at any time during the course of the repairs under valid permits. The judgment that the nonconforming use status has not been lost is correct.
For the foregoing reasons, the judgment in favor of defendants-appellees and against the plaintiff-appellant rejecting her demands and dismissing her suit at her cost is affirmed. Plaintiff-appellant is to pay the cost of this appeal.
Affirmed.