318 So.2d 117 (1975)
Robert Earl MAGNESS, Plaintiff-Appellee,
v.
CADDO PARISH POLICE JURY, Defendant-Appellant.
No. 12562.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1975.
On Rehearing September 3, 1975.
*119 John A. Richardson, Dist. Atty., Lawrence M. Johnson, Asst. Dist. Atty., Shreveport, for defendant-appellant.
Hal V. Lyons, Shreveport, for plaintiff-appellee.
Before AYRES, BOLIN, and DENNIS, JJ.
AYRES, Judge.
By this action plaintiff seeks, through injunctive process, to maintain the status quo of a noncomforming use of a described ten-acre tract of land as a motorhome park. Plaintiff's position is that when he acquired the property in 1970 and began its improvement as a motor-home park there was no applicable zoning ordinance affecting the property.
In reconvention, defendant contends that plaintiff's property, now located within a distance of five miles of the corporate boundary of the City of Shreveport, is subject to a comprehensive zoning ordinance and that under its provisions the property is classified as "R-A," that is, "Residential-Agricultural." On a basis of this contention defendant seeks, also by injunctive relief, compliance on the part of plaintiff with the provisions of the aforesaid ordinance.
After trial of this cause upon its merits, the court concluded that plaintiff had established his nonconforming use of the property and consequently rendered judgment in plaintiff's favor enjoining and prohibiting defendant from restraining plaintiff from its aforesaid use. From the judgment thus rendered and signed, defendant prosecutes this appeal.
It is defendant's contention on this appeal that by ordinance effective March 29, 1972, plaintiff's property theretofore lying outside the boundaries of the five-mile area over which the Metropolitan Planning Commission had authority was extended to include this property within the zoning area, and that, under the terms of the zoning ordinance, in order for a structure to acquire and maintain a nonconforming use status, it was necessary that the construction thereof must have commenced prior to the extension of the zoning limits and should have been completed within two years of the extension of the limits.
The defenses are (1) that the improvements contemplated by plaintiff were not begun prior to March 29, 1972, the effective date of the ordinance extending the boundaries of the area over which the Planning Commission had jurisdiction, and (2) that the improvements were not completed within the prescribed two-year period, that is, on or before March 29, 1974.
Pertinent facts established in the record may be first briefly reviewed. The property was acquired by plaintiff in 1970 for the purpose of developing a motor-home park. This was prior to the extension of the Metropolitan Planning Commission's authority over the property. Soon after acquisition of the property, plaintiff, during the year 1970, began and pursued the construction of the improvements thereon which culminated in the construction of the motor-home park. A site was cleared for the construction; plans were drawn; water wells were drilled; and spaces for two or three trailer homes were made available, serviced with electricity and by septic tanks for sewage disposal. Although the work was intermittent and somewhat spasmodic, dependent upon plaintiff's ability, and delayed because of his illness, all of the above was accomplished prior to March 29, 1972, the date the zoning ordinance became effective as to plaintiff's property.
The record further discloses that in the meantime provision had been made for the connection of plaintiff's sewer line with that of an adjoining motor-home park. The connection had not been made by the time of trial due to the delay in the completion of the neighboring oxidation or disposal plant which awaited approval by the appropriate health authority. Nevertheless, on plaintiff's tract, underground pipe for sewerage *120 and water lines was laid and water meters installed, all of sufficient capacity to serve many motor-park homes. Electrical service was assured and available, but not installed on an individual basis until needed. Three mobile homes were located on the property prior to the expiration of the two-year period, that is, prior to March 29, 1974. These, for sewage disposal, were served by the use of septic tanks.
Hugh D. Wells, a representative of the Metropolitan Planning Commission, testified from proof furnished him that plaintiff's construction had begun before the effective date of the zoning ordinance. Such finding is corroborated by the details of the construction to which we have referred.
The question remains, however, as to whether the construction continued to completion within two years following the effective date of the ordinance. Construction continued during the next two years and the work and improvements were accomplished as related hereinabove. Defendant contends, as heretofore noted, that the improvements had to be completed within the two-year period following the effective date of the zoning ordinance. Wells was questioned as to the criteria for determining "completion of construction." His answer was "minimum complianceminimum facilities."
Completion of an improvement of the character undertaken here is relative. When more tenants arrive and seek to rent space for their mobile homes, more driveways and other facilities are provided. Completion, therefore, is a relative term. Constant expansion and improvement are contemplated and undertaken as the facility grows and demands for its services increase.
With respect to neighboring mobile-home parks, the record shows they are not yet fully completed. A similar situation exists with respect to plaintiff's projectexpansion and improvement are contemplated. Plaintiff relies for compliance with the zoning ordinance upon a definition of a "trailer-court" contained in the zoning ordinance: "Any premises used or set apart for the purpose of supplying to the public parking space for one or more trailer coaches for living and sleeping purposes. . . ."
The record leaves no doubt as to plaintiff's substantial compliance with the requirements of the ordinance. Spaces were provided for and actually used by two or three mobile-home occupants. They were provided with electricity, water, and provisions for sewage disposal through underground septic tanks.
In this connection it appears appropriate to observe that the two or three other motor-home parks with respect to which evidence was given have, under similar circumstances, been accepted and treated by the Commission as completed within the terms of the ordinance. No other view would permit the extension, expansion, or improvement of mobile-home parks so as to accommodate the public to the evergrowing need or increase for such services. We are not impressed that it was the intention of the zoning ordinance to prohibit an extension, expansion, or improvement of services.
The trial court held that plaintiff had met the minimum requirements for the establishment of a mobile-home park. With this conclusion, we are in accord. The principle is well established in this State that zoning ordinances are in derogation of the rights of private ownership and, as they curtail and limit the use of property, they are to be strictly construed in favor of the property owner or possessor. Where exemptions appear they are to be most liberally construed in the property owner's favor. City of Crowley v. Prejean, 173 So.2d 832 (La.App., 3d Cir., 1965); Roberts v. Jefferson Parish Council, 235 So.2d 131 (La.App., 4th Cir., 1970).
*121 In the City of Crowley v. Prejean, supra, Judge Tate, author of the majority opinion, now an associate justice of the Supreme Court, stated in substance that a rule forbidding the enlargement or extension of a nonconforming use, with respect to zoning ordinances, does not prevent an increase in the amount of use within the same area, so that a nonconforming use may not only be continued but also increased in volume and intensity, and that a nonconforming use is not limited to the precise magnitude thereof which existed at the date of the ordinance. It was accordingly held that a nonconforming use permissible under a zoning enactment is not limited to the extent of such prior use on which the nonconforming status of the land is based and the owner of the nonconforming tract is thus ordinarily entitled to increase the amount and extent of such use within the nonconforming tract, unless the zoning regulation provides otherwise.
In the cited case, it was held that where a nonconforming use resulted from the rental of a residential tract for one house trailer, the nonconforming status of the tract entitled the landowners to operate a trailer court not limited to a single house trailer but that the landowner was entitled to increase the extent of the nonconforming use within the nonconforming tract to rental space for two or more house trailers.
The instant case, in our opinion, is subject to and is governed by the aforesaid principles enunciated in the City of Crowley case. See the authorities therein cited.
For the reasons assigned, we find no error in the judgment appealed. It is accordingly affirmed at such costs as are assessable against the defendant.
Affirmed.
DENNIS, J., dissents and assigns written reasons.
DENNIS, Judge (dissenting):
I respectfully dissent.
The zoning ordinance at issue contains a very liberal provision benefiting landowners who, on the effective date of the ordinance, were in the process of constructing improvements which would constitute prohibited usages under the ordinance. In essence, it provides a grace period within which the landowner may perfect a nonconforming use of his property by completing the "entire structure" within two years after the ordinance's effective date.
Other sections of the ordinance provide that a nonconforming use may not be extended throughout a structure, if "structural alterations" are made as a consequence thereof; that a "structure" is anything constructed or erected which requires a location on the ground or is attached to something on the ground, except utility poles and fences; and that a "trailer court" is a premises supplying parking space for trailers for "living and sleeping purposes", and includes any buildings, structures, vehicles, or enclosure used or intended for use as a part of the equipment of such trailer camp or court.
As I view the evidence, Magness, who admittedly proceeded at a "leisurely" pace, failed to locate on the property sufficient "structures" for the parking of more than 3 trailers for "living and sleeping purposes", i.e., having the necessary facilities for inhabitation, within the two year grace period. At the end of this time he had laid a workable main water line on the property attached to one meter. He had laid an inoperative main sewer line which had never been used because he planned to tie into a neighboring sewer system that had not yet been approved by the department of health. He had not run feeder lines from the main electric, water and sewer lines to individual trailer parking spaces. In fact, outside of tying 3 trailers onto the electric and water lines, and providing *122 them with septic tank service, he had not completed any inhabitable trailer spaces on the property. In order to do so, he will have to tie in the main sewer line in accordance with his plan, which is dependent on a neighbor's consent and department of health approval, construct improved roads, grade parking spaces, lay feeder lines to the main sewer and water pipes, attach individual meters, and install individual electric poles and lines. All of this will clearly require the erection, construction and location of additional "structures" on the property or "structural alterations" of existing improvements. Thus, the "entire structure" which Magness completed within the grace period consisted of 3 inhabitable trailer parking spaces. According to a drawing of the proposed trailer park introduced by Magness he contemplates adding structures and improvements to accommodate 51 additional usable trailer parking spaces. Thus it is clear that he has not even made "substantial compliance with the requirements of the ordinance", as stated by the majority opinion, because the ordinance states that the "entire structure shall be completed" within the grace period.
The instant case is clearly distinguishable from City of Crowley v. Prejean, 173 So.2d 832 (La.App., 3d Cir. 1965) cited in the majority opinion. In that case the landowner established as a nonconforming use before the effective date of the ordinance four fully inhabitable trailer spaces with complete utility services. No additional construction was required beyond the crucial date and the full extent of the trailer park was well defined at that time. The court held that renting one of the spaces for the first time after the effective date of the ordinance was not an untimely attempt to establish a nonconforming use but merely an enhancement of the usage established before the effective date. The court clearly did not hold, as the majority opinion seems to say, that the owner could complete additional inhabitable trailer spaces after the effective date of the ordinance. In the present case Magness established but 3 inhabitable trailer spaces with complete utility services within the two year grace period following the effective date of the ordinance. Unlike the owner in the City of Crowley case, Magness is not merely seeking to rent one of the three completed trailer spaces, he intends to engage in extensive construction to establish many additional usable trailer spaces. Under the majority ruling he will be allowed to expand the magnitude of a nonconforming usage enormously over an indefinite period of time after the effective date of the ordinance. This result is contrary to the holding in the City of Crowley case and other jurisprudence. Id. at page 835.
The majority opinion is more than a strict construction of a zoning ordinance against a governing authority. By too leniently interpreting a liberal exemption, the court may have rendered the ordinance nugatory as to all construction commenced prior to its effective date. Nor would a correct application of the ordinance force a harsh result in this case. Magness had ample time to complete structures for more than 3 inhabitable trailer spaces. The evidence leaves a resulting impression that Magness did not utilize the two year grace period with reasonable diligence and has completely disregarded his obligation to perfect a nonconforming use in accordance with the law. Also, under the ordinance, he may apply for a rezoning of his property to allow more trailer spaces to be completed. The evidence indicates that the property of the neighbor whose sewer system he plans to utilize has recently been rezoned for trailer parking. The zoning ordinance should have been enforced by restricting the nonconforming use to that established within the grace period granted by the local government.
If the trial court judgment is affirmed it should be amended to clarify the extent of the trailer court Magness will be allowed to build. The judgment enjoins the governing authority from "restraining plaintiff, *123 Robert Earl Magness, from the use of his property. . . ." Literally interpreted, this could allow him to build more than one trailer park or even engage in other prohibited usages on the property. The judgment should be reformed to allow Magness to finish only the proposed trailer park which the majority has found was "substantially" completed within the two year period following the effective date of the ordinance.
Before BOLIN, PRICE, HALL, DENNIS, and MARVIN, JJ.

ON REHEARING
MARVIN, Judge.
A rehearing was granted on the application of Police Jury, Defendant-Appellant. The jury contends that this court was in error in holding that the landowner had "substantially complied" with the requirements of the zoning ordinance. We deem it appropriate to clarify in what context this statement was made.
Exhibit P-4 consists only of three pages (pp. 4, 60 and 64) of the zoning ordinance in question. Obviously the ordinance is of greater length and is much more comprehensive in dealing with problems of land use than is reflected in the limited provisions which are in evidence before this court.
"Trailer-Court" is defined on page 4 as:
"Any premises used or set apart for the purpose of supplying to the public parking space for one or more trailer coaches for living and sleeping purposes, and which include any buildings, structures, vehicles, or enclosure used or intended for use as a part of the equipment of such trailer camp or court."
On the same page "Structure" is defined as:
"Anything constructed or erected which requires location on the ground or attached to something having a location on the ground; provided, however, that utility poles and fences and walls (other than building walls) shall not be considered to be structures."
On page 60 of this exhibit there are provisions relating to the "Continuance of Nonconforming Uses" (paragraph B-1) and to the "Extension of Nonconforming Uses in Structures" (paragraph B-2). While paragraph B-1 states that a nonconforming use may be "continued", a proviso in this paragraph prohibits an "increase" in the number of "dwelling units" of a nonconforming dwelling use.
On page 64 of this exhibit there is a provision which requires the "construction" of a "structure" to be "completed" within two years after the effective date of the ordinance. This provision is the source of the two-year period mentioned in the original opinion.
In construing these limited provisions of the zoning ordinance we are bound by the rules of strict construction against provisions which are in derogation of the rights of private ownership and liberal construction as to exemptions favoring the landowner. These principles and supporting authorities are set forth in our original opinion.
Appellant would have us construe a trailer court as a "dwelling unit" and as a "structure". The definition of trailer court is couched in terms of parking spaces for trailers used for living and sleeping purposes. A trailer court is not a dwelling unit but a "parking space" for a trailer for living and sleeping purposes by the limited definition of the ordinance. We are not favored with the definition of dwelling unit, if there be one in the ordinance. A trailer, as distinguished from a trailer court, may be a dwelling unit while the trailer court itself provides parking spaces for trailers used for living and sleeping.
The definitions also establish that a "trailer court" and a "structure" are separate and distinct things. The ordinance contemplates that a trailer court might "include" *124 a structure "intended for use as a part of the equipment of the trailer court.. . ."
The definition of trailer court does not set forth what requirements, if any, must be met for a tract of land to acquire status as a nonconforming use as a trailer court. Some ordinances may require such things as operable utility and sewer systems within a specified distance of each trailer parking space in order for a tract of land to acquire legal status as a trailer court. The record in this case does not provide us with such requirements and this court cannot supply them. We can consider only those portions of an ordinance which are in the record or which we may judicially notice under circumstances permitted by law. See R.S. 13:3712(B) and Boles v. Fireman's Fund American Insurance Company, 250 So.2d 529, La.App.2d Cir. 1971.
This landowner acquired the 10-acre tract in 1970. In 1972, the authority of the ordinance was extended to encompass this tract. Between the time he acquired it and the time suit was filed in 1974 the landowner performed some work on the tract to create a "trailer court" within the definition of the ordinance and establish a nonconforming use. The work which was done was generally summarized in our original opinion as facts "established by the record". We are not persuaded that our original recitation of facts was in error. Our conclusions drawn from those facts are set forth in this opinion on rehearing.
What we intended to hold originally as to "substantial compliance" and what we now hold is that this landowner, within the contemplation of the definition in the ordinance, "used" a portion of his premises as parking spaces for one or more trailers (actually three trailers) and that he "set aside" the remaining portion of his premises for parking space for 48 more trailers.
The lower court in its "Reasons for "Judgment" held that the landowner was entitled to enjoin the Police Jury from interfering with his operation of a trailer court on the tract involved. It was our intention to affirm this holding as the judgment of this court.
The judgment below as originally affirmed however, was broader than this holding in that in enjoined the Police Jury from interfering with the landowner's use of the land without restricting that use to a trailer court as defined by the ordinance. Our original opinion is modified to limit the judgment below as is herein provided.
Also in our original opinion several principles from City of Crowley v. Prejean, 173 So.2d 832 (La.App.3rd Cir., 1965) and Roberts v. Jefferson Parish Council, 235 So.2d 131 (La.App.4th Cir., 1970) were held to "govern" in this appeal. This statement requires clarification.
The principles are well established in this State that zoning ordinances are in derogation of the rights of private ownership and, as they curtail and limit the use of property, they are to be strictly construed in favor of the landowner. Where exemptions appear they are to be most liberally construed in the landowner's favor. These principles are applicable here.
From Prejean our original opinion quoted principles relating to what extent the landowner of a tract established as a nonconforming use might increase or enlarge within the tract the nonconforming use. The principles are sound, but are unnecessary to our holding that the landowner, plaintiff-appellant herein, has established a nonconforming use of his tract as a trailer court and is entitled to continue that use, that is supplying parking spaces to the public for trailers for living and sleeping purposes.
To what extent this landowner may or may not be required to obtain the approval of zoning authorities to further improve and extend existing utilities and other improvements for his operation of a trailer court as a nonconforming use on his tract of land is dependent upon factual and legal *125 circumstances which are not present in this record.
We hold that the Police Jury is enjoined from interfering with the landowner's supplying to the public, parking spaces for trailers for living and sleeping purposes on his 10-acre tract of land.

THE PLEA OF PRESCRIPTION
In this court the landowner filed a plea of prescription which we are required to consider. See La.C.C.P. Art. 2163. This plea is based on La.R.S. 9:5625(A) which provides in part that all actions relative to alleged use violations of zoning ordinances must be brought within two years from the date the parish first had knowledge of the violation.
An employee of Metropolitan Planning Commission, referred to in our original opinion, did testify that the landowner contacted him in the employee's office "in the spring of 1970" requesting a "letter to construct" a trailer park. As we view this testimony it was merely a declaration of the landowner's intention. The next time the employee saw the landowner was in "November of 1973" when the landowner was informed of recent complaints by the neighbors of the landowner's activities on the property.
A declaration of intention in 1970 was not a violation of the zoning ordinance. The property was not then subject to the ordinance. In this respect the landowner has not met his burden of establishing knowledge on the part of the parish more than two years prior to the institution of the action. The plea of prescription is overruled.
As modified in this opinion on rehearing, our original judgment is recast in part to read:
It is ordered, adjudged and decreed that the Caddo Parish Police Jury, its agents, employees and all other persons acting or claiming to act on its behalf, are restrained, enjoined and prohibited from interfering with Robert Earl Magness supplying parking spaces to the public for trailers for living and sleeping purposes on the 10-acre tract of land described in the original judgment of the lower court, as a non-conforming use in accordance with, but subject to the provisions of the Zoning Ordinance of Caddo Parish and other laws and ordinances and authorities to which such non-conforming use may be applicable.
As thus modified, our original judgment is reinstated.
DENNIS, J., dissents for the reasons originally assigned.