402 So.2d 259 (1981)
CITY OF WEST MONROE, Plaintiff-Appellee,
v.
OUACHITA ASSOCIATION FOR RETARDED CHILDREN, INC. a/k/a Ouachita Association For Retarded Citizens, Defendant-Appellant.
No. 14655.
Court of Appeal of Louisiana, Second Circuit.
July 20, 1981.
*260 McLeod, Verlander & Dollar by Robert P. McLeod and David E. Verlander, III, Monroe, for defendant-appellant.
James A. Norris, Jr., West Monroe, for plaintiff-appellee.
Before PRICE, HALL and FRED W. JONES, Jr., JJ.
HALL, Judge.
The City of West Monroe filed suit seeking a judgment declaring that the defendant's proposed use of property located in an R-1 (one-family residence) district as a group home for mentally retarded adults is not a permitted use under the city zoning ordinance, and seeking an injunction. Defendant, Ouachita Association for Retarded Children, Inc. a/k/a Ouachita Association for Retarded Citizens, answered contending its proposed use constitutes use of the property as a one-family dwelling as defined in the zoning ordinance and praying for judgment recognizing its proposed use to be a permitted use of right. After trial on stipulated of right. After trial on stipulated facts the district court found that defendant's proposed use of the residential property was a special exception use which had to be approved by the City Planning Commission and by the Board of Adjustment because the group home did not constitute because the group home did not constitute use as a one-family dwelling. From a judgment so declaring and granting an injunction restraining defendant from occupying or using the property as a group home for mentally retarded persons without prior administrative approval, the defendant-association appealed. We reverse and render judgment declaring the proposed use to be a use of right under the pertinent provisions of the zoning ordinance.
The joint stipulation of facts and exhibits attached thereto establish the following pertinent facts.
The property in question is zoned R-1: one-family residential district. The property immediately across the street from the subject property is zoned B-3: general business district. The subject property was formally occupied as a church, at least as recently as 1972. The property has been leased by the owner of the defendant. The property is physically an ordinary house with approximately 3,744 square feet of heated space, containing one kitchen, one dining room, one living room, six bedrooms, several bathrooms, and one laundry room with only the usual types of entrances and exits found in a home and is located on a lot 100 feet X 155 feet at the corner of Slack and North Third Streets in West Monroe.
The proposed use by the defendant of the property is as follows:
There will be six adult mildly to moderately mentally retarded residents, none with any severe behavioral or medical problems, on a permanent basis, and a married *261 couple to serve as houseparents. There may be one or two other retarded residents on an occasional temporary basis. The retarded residents will be required to hold employment outside of the home.
The houseparents will live in a master bedroom and have a private bath. The other residents will live in the remaining five bedrooms and share the remaining bathroom facilities.
The entrances, living room, dining room, kitchen, laundry and other such aspects of the house will be for common usage. There will be rules for household behavior and chores, which will be developed by the houseparents after discussion with the residents. The houseparents will see that the rules are followed and the chores done, much as in any home.
The home is required to be licensed by the State of Louisiana under LSAR.S. 28:380, et seq., and is, or will be so licensed prior to use. The home will comply with all applicable guidelines and requirements of the State of Louisiana, Department of Health & Human Resources, Division of Mental Retardation, and of any branch or successor agencies thereto.
The occupants of the proposed home are neither mentally ill nor insane, nor are they physically ill in any way different from the general population; they are simply mentally retarded.
There has been substantial opposition voiced among some of the residents in the vicinity of the property to the location of the group home on the property.
An application was made by the defendant for planning commission approval and for board of adjustment approval as a special exception use after being advised by the zoning administrator that the proposed use could not be had without such approval. The applications were filed without benefit of consultation with legal counsel. The application was approved by the planning commission but was denied by the board of adjustment. No appeal was taken from the action of the board.
Subsequently, an attorney for the defendant advised the zoning administrator by letter of its position that the proposed use is as a single-family dwelling and is a permitted use of right under the ordinance, and that no approval by the planning commission or board of adjustment is necessary. The letter further advised the administrator that the association intended to proceed to make use of the property as a group home for mentally retarded adults in the manner described above. This suit by the city for a declaratory judgment and injunction ensued.
The mental retardation law, LSA R.S. 28:380, et seq., authorizes the establishment of a comprehensive statewide plan for providing services to meet the needs of mentally retarded persons under the direction of the Office of Mental Retardation of the Department of Health & Human Resources. The statute provides for the establishment of residential facilities to be operated by the office or by licensed private persons, groups, or corporations, with funding provided in whole or in part by state, federal, or local funds or by private persons, groups, or organization. LSAR.S. 28:383 contains the following statement of public policy:
"It is recognized that mental retardation is a handicapping condition and in itself does not pose a threat to the safety and security of the community and that the maximum feasible inclusion of the mentally retarded in the community life can be of benefit to both the mentally retarded and the community. It is further recognized that the use of least restrictive alternatives provide the mentally retarded with the greatest opportunity to participate in community life. Therefore, the department shall endeavor to develop and encourage the development of least restrictive alternatives to meet the needs of the department's client population. The department shall further insure placement in the least restrictive alternative appropriate to the developmental needs of each individual."
LSA 28:390 provides in part:

*262 "A. Every mentally retarded person in this state shall have the rights, benefits, and privileges guaranteed by the constitution and laws of the United States and the constitution and laws of the state of Louisiana. Every client shall enjoy the same rights as other citizens of the United States and Louisiana except when lawfully restricted. The rights of mentally retarded persons which are specifically enumerated in this Chapter are in addition to all other rights enjoyed by all citizens including the mentally retarded, and such listing of rights is neither exclusive or intended to infringe upon any rights which are guaranteed to the mentally retarded under the laws and constitutions of the United States and the state of Louisiana.
"B. Every mentally retarded person shall have the following rights:
"(1) To live in the least restrictive setting appropriate to his individual needs and abilities, including the right to live in a variety of living situations, such as the right to live alone, in a group home, with a family, and in a supervised, protective environment...."
The parties agree that a determination of this case depends on the interpretation of the applicable portions of the zoning ordinance of the City of West Monroe. As noted by the learned trial judge "there is no constitutional or other attack here upon the validity of the zoning ordinance. Neither is there any issue here which has any relation to the fears and other emotional reactions of the neighbors or to the benevolent, enlightened, caring motivations of defendant's members and the programs under which they intend to function. Neither is this a legal contest between selfish property owners and neglected and needy handicapped citizens. Neither is the number of proponents and opponents of any consequence." The sole legal issue presented by the parties to this litigation is whether under the zoning ordinance the defendant's proposed use is a permitted use in an R-1, one-family residential district and, if so, whether it is a use of right or a special exception use.
The defendant-association contends that its proposed use is as a one-family dwelling, a permitted use of right in an R-1 district, under the zoning ordinance which defines family as one or more persons living together as a single housekeeping unit which may include not more than four lodgers or boarders. The plaintiff-city contends that the proposed use is not as a one-family dwelling but is akin to a convalescent home or institution for children, or the aged, or a sanitarium, which are permitted special exception uses in an R-1 district, requiring planning commission and board of adjustment approval. The city alternatively contends that the proposed use is as a rooming or boarding house or hotel, which is permitted only in a B-3 general business district.
In carefully considered and well-articulated written reasons for judgment the trial court considered the ordinance as a whole and found that the intent was to provide for administrative examination before permitting use for nonrelated group residency and special care in R-1 districts. The court found that the projected use by defendant has some characteristics comparable to a convalescent home, a boarding or rooming house, a sanitarium, and a residential facility for the aged or other persons whose physical or social or mental handicaps or limitations require supervision and special attention. The court concluded that the use is, therefore, in the nature of a public facility of a general institutional nature for providing both residential and personal care services to unrelated persons who cannot or are not getting such services at home or in governmental institutions; it is not necessary for resolution of this dispute to classify defendant's use as falling precisely within or without one of the specific word definitions in the ordinance. The court held that the ordinance restricts such use in an R-1 district, does not permit use by right status, and requires administrative review and permission.
While the trial court's conclusion is reasonable and has considerable merit, we reach a contrary conclusion because we find that the proposed use by the association *263 falls squarely within the plain and unambiguous language of the ordinance defining one-family dwelling residential use. We find it unnecessary to search for unexpressed intentions or to attempt to analogize the use proposed by defendant to other uses set forth in the ordinance.
Article A, § 12-5005 of the zoning ordinance prohibits all uses of property except those uses allowed by the ordinance for the district in which the property is located. Article B, § 12-5012 of the ordinance deals with R-1, one-family residential districts. That section reads in pertinent part:
"These districts are composed mainly of areas containing one family dwellings and open areas where similar residential development seems likely to occur; few two (2) family and multiple-family dwellings are found in these areas. The district regulations are designed to protect the residential character of the areas by prohibiting all commercial activities; to encourage a suitable neighborhood environment for family life by including among the permitted uses such facilities as schools and churches, and to preserve the openness of the areas by requiring certain minimum yard and area standards to be met.
"(a) Permitted uses. In R-1 districts only the following uses are permitted:
"(1) Uses by right. The uses listed below are permitted subject to the conditions specified: ...
"Dwelling, one family ...
"(2) Uses requiring planning approval. The uses listed below are permitted upon approval of the location and site plan thereof by the planning commission as being appropriate with regard to transportation and access, water supply, water disposal, fire and police protection, and other public facilities, as not causing undue traffic hazard, and as being in harmony with the orderly and appropriate development of the district in which the use is located: ...
"(3) Special exception uses. The uses listed below are subject to the same approval of location and site plan as uses requiring planning approval; in addition, these uses are declared to possess the characteristics of unique or special form that each specific use shall be considered an individual case and shall be subject to approval of the board of adjustment in accordance with the provisions of article G governing special exceptions: ...
"Art gallery or museum
"Cemetery ...
"Convalescent home ...
"Institution for children or the aged
"Hospital or sanitarium
"Nursery, day care or kindergarten
...."
Article A, § 12-5006 of the ordinance contains the following definitions:

"Boarding house. A building, where, for compensation and by prearrangement, five (5) or more persons other than occasional or transient customers are provided with meals."

"Dwelling unit. One (1) or more rooms in the same structure, connected together and constituting a separate, independent housekeeping unit for permanent residential occupancy and with facilities for sleeping and cooking."
"Dwelling, one (1) family. A detached building containing one (1) dwelling unit and used exclusively by one (1) family."

"Family. One (1) or more persons living together as a single housekeeping unit, which may include not more than four (4) lodgers or boarders."

"Hotel. A building containing guest rooms in which lodging is provided, with or without meals, for compensation, and which is open to transient or permanent guests, or both, and where there is either no provision made for cooking in any guest room or provision made for cooking in not more than 25 percent of the guest rooms; the term includes `motel'."

"Hospital. An institution providing health services, primarily for in-patients, and medical and surgical care of the sick or injured, including, as an integral part of the institution, such related facilities as laboratories, outpatient departments, training facilities, central service facilities, and staff offices." *264 "Rooming house. A building, other than a hotel, where for compensation and by prearrangement, five (5) or more persons other than occasional or transient customers are provided with lodging."
Interpretation of the zoning ordinance must begin with the well-recognized rule that zoning ordinances are in derogation of the rights of private ownership and, therefore, must be strictly construed in favor of the use proposed by the owner. Wright v. DeFatta, 244 La. 251, 152 So.2d 10 (1963); Carrere v. Orleans Club, 214 La. 303, 37 So.2d 715 (1948); City of Kenner v. Kenner Academy, 373 So.2d 197 (La.App. 4th Cir. 1979); Magness v. Caddo Parish Police Jury, 318 So.2d 117 (La.App. 2d Cir. 1975); Henderson v. Zoning Appeals Board of Jefferson Parish, 328 So.2d 175 (La.App. 4th Cir. 1975), cert. denied 331 So.2d 474 (1976); Smith v. City of Alexandria, 300 So.2d 561 (La.App. 3d Cir. 1974), writ denied 303 So.2d 186, 187; State ex rel. Time Saver Stores v. Board of Zon. Adj., 261 So.2d 273 (La.App. 4th Cir. 1972), writ refused 262 La. 311, 263 So.2d 47 (1972); Roberts v. Jefferson Parish Council, 235 So.2d 131 (La.App. 4th Cir. 1970), writ denied 256 La. 819, 239 So.2d 345 (1970).
In Magness, supra, this court made the following statement:
"... The principle is well established in this State that zoning ordinances are in derogation of the rights of private ownership and, as they curtail and limit the use of property, they are to be strictly construed in favor of the property owner or possessor...."
Only those uses specified in the ordinance are permitted in an R-1 district. There are three types of permitted uses: uses by right, uses requiring planning commission approval, and special exception uses requiring approval by the planning commission and by the board of adjustment. One of the permitted uses by right is "Dwelling, one family". This term is defined by the ordinance as a detached building containing one dwelling unit and used exclusively by one family. Family is defined as one or more persons living together as a single housekeeping unit, which may include not more than four lodgers or boarders.
The building which the defendant purposes to use for the group home is a detached building containing one dwelling unit. It is to be used exclusively by one family as that term is defined in the ordinance (one or more persons living together as a single housekeeping unit), unless the persons who will be living together include more than four "lodgers or boarders."
The provision that a family may include not more than four lodgers or boarders ties in with the definitions of boarding house and rooming house contained in the ordinance. Boarding house and rooming house are defined as buildings where, for compensation and by prearrangement, five or more persons other than occasional or transient customers are provided with meals or lodging. The effect of these related provisions is to prohibit the location of commercial boarding or rooming houses in a residential district and to allow their location only in a business or commercial district.
In Black's Law Dictionary, 4th Edition, "boarder" is defined as:
"One who makes a special contract for food with or without lodging. Berkshire v. Woollen Co. v. Proctor, 7 Cush., Mass., 424; One who boards at a boarding house or school. Atlantic City v. Le Beck, 125 N.J.L. 373, 15 A.2d 653, 654. One who has food and lodging for an agreed price, usually under a contract intended to continue for a considerable period of time. Ullman v. State, 1 Tex.App. 220, 28 Am. Rep. 405."
"Lodger" is defined as:
"An occupant who has mere use without actual or exclusive possession. Roberts v. Casey, 36 Cal.App.2d, Supp. 767,93 P.2d 654, 657, 658, 659; Coggins v. Gregorio, C.C.A.N.M., 10th Cir., 97 F.2d 948, 951; Marden v. Radford, 229 Mo. App. 789, 84 S.W.2d 947, 955, 957, 959.
"A tenant, with the right of exclusive possession of a part of a house, the landlord, by himself or an agent, retaining general dominion over the house itself, *265 Wallsey v. Perkins, 7 Man. Pollock v. Landis, 36 Iowa 652; one obtaining room in residence hotel by special arrangement with proprietor at fixed rate for permanent stay and having merely use of room, Brams v. Briggs, 272 Mich. 38, 260 N.W. 785; one who has no interest in the realty but who occupies part of a tenement which is under the control of another, Edwards v. City of Los Angeles, 48 Cal.App.2d 62, 119 P.2d 370, 373; one who occupies hired apartment in another's house; a tenant of part of another's house, Smith v. Dorchester Hotel Co., 145 Wash. 344, 259 P. 1085, 1086; Dewar v. Minneapolis Lodge, No. 44, B. P. O. E., 155 Minn. 98, 192 N.W. 358, 359, 32 A.L.R. 1012; one who occupies room or portion of tenement under control or in occupancy of another and has no interest in real estate, Stone v. City of Los Angeles, 114 Cal.App. 192, 299 P. 838, 841."
The occupants of the group home do not meet the definitions of lodger or boarder, nor does the group home constitute a boarding house or rooming house. Although the residents will eat and sleep in the home, they cannot be deemed to be an unrelated group of people occupying only a part or a portion of another's house. The mentally retarded adults have common interests, common goals, common problems, and will be receiving some supervisory attention from the houseparent couple who will also reside in the home. They will not be mere lodgers or boarders, especially in the commercial context in which the terms are used in the ordinance. Rather, the persons residing in the group home constitute a single housekeeping unit composed of persons who are living and working together toward common goals and who will, as nearly as possible, emulate the lifestyle of the traditional family as we know it.
In defining one-family dwelling and family, the ordinance does not place any numerical restriction on the number of persons living together as a single housekeeping unit, nor does it require any relationship between the persons, biological or otherwise. The ordinance does limit the number of boarders or lodgers who may be accommodated in a one-family residence but as previously held that situation does not exist here.
Although the issue presented by this case is res nova in Louisiana the courts of several other states have dealt with similar situations under zoning ordinances containing similar provisions. Where municipal ordinances have defined family simply as a single housekeeping unit, state courts have generally refused to read into the ordinance any requirement that the members of the household be related. Similarly, the courts have generally rejected contentions that residents of a group home are boarders or lodgers or that such a home is a boarding house or rooming house. See: Township of Washington v. Central Bergen Community Mental Health Center, Inc., 156 N.J.Super. 388, 383 A.2d 1194 (1978) (transitional residence for five female dischargees of mental health institutions deemed to be a single family dwelling where "family" was defined as "any number of individuals living together as a single housekeeping unit and using certain rooms and housekeeping facilities in common."; Oliver v. Zoning Commission of the Town of Chester, 31 Conn.Sup. 197, 326 A.2d 841 (1974) (group home for nine employable mentally retarded adults with a houseparent couple held to be a single family dwelling where family was defined as "one or more persons occupying the premises as a single housekeeping unit, as distinguished from a group occupying a boarding house, lodging house, club, fraternity, or hotel."); Carroll v. City of Miami Beach, 198 So.2d 643 (Fla.Dist.Ct. of App.1967) (Mother Superior and small group of novices deemed to constitute a family where family is defined as "one or more persons occupying premises and living as a single housekeeping unit, as distinguished from a group occupying a boarding house, a lodging house, or hotel, as herein defined."); Application of Laporte, 2 App. Div.2d 710, 152 N.Y.S.2d 916 (1956) (60 student members of a religious order held to constitute a family for purposes of a zoning ordinance which defined family as "one or *266 more persons occupying a dwelling unit as a single, non-profit housekeeping unit."); Missionaries of Our Lady of La Salette v. Village of Whitefish Bay, 267 Wis. 609, 66 N.W.2d 627 (1954) (three priests and two lay brothers of a religious organization deemed to constitute a family where family is defined in the zoning ordinance as "... one or more individuals living, sleeping, cooking or eating on premises as a single housekeeping unit."); Robertson v. Western Baptist Hospital, 267 S.W.2d 395 (Ky.App. 1954) (use of a house located in a one-family zone as a residence for 20 nurses held to be a permitted use where family was defined as "one or more persons living as a single housekeeping unit, as distinguished from a group occupying a hotel, club, fraternity or sorority house.").
The decisions in the cases cited above relied on the well-organized principle that zoning ordinances are to be strictly construed in favor of the use proposed by the owner, which principle also forms an important basis for our decision in this case. The persons who will occupy the association's group home will be living together as a single housekeeping unit, therefore, the proposed use of the property is a use by right under the zoning ordinance of the City of West Monroe and, as such, does not require the approval of the city planning commission or the board of adjustment.
The judgment of the district court is reversed and set aside. It is ordered, adjudged, decreed, and declared that the proposed use by the Ouachita Association for Retarded Children, Inc. a/k/a Ouachita Association for Retarded Citizens, of the property at 401 Slack Street, West Monroe, Louisiana, as a group home for mentally retarded adults as described in this opinion is a one-family dwelling use and a permitted use of right under the zoning ordinance of the City of West Monroe. Costs of the appeal are assessed to the plaintiff-appellee.
Reversed and rendered.