465 So.2d 82 (1985)
CITY OF KENNER
v.
NORMAL LIFE OF LOUISIANA, INC.
No. 84-CA-317.
Court of Appeal of Louisiana, Fifth Circuit.
February 11, 1985.
Rehearing Denied March 21, 1985.
Writ Granted June 7, 1985.
*83 George W. Giacobbe, Kenner, for plaintiff-appellee.
James A. Gray, II, New Orleans, for defendant-appellant.
Before BOUTALL, KLIEBERT and CURRAULT, JJ.
CURRAULT, Judge.
This appeal arises from a judgment granting a permanent injunction to plaintiff, City of Kenner, enjoining defendant, Normal Life of Louisiana, Inc. (Normal Life) from operating community homes for the mentally retarded in certain areas of Kenner, Louisiana.
The defendant, Normal Life, obtained leases on several pieces of property located within the city of Kenner intending to use the property as community homes for the mentally retarded. To this end, sometime after August of 1983, a representative for Normal Life held discussions with the City Planning Department and the mayor, inquiring on any steps necessary to get approval for the location of the homes. The City Planning Department and the mayor indicated that no approval was required from them; and in September, 1983, the mayor wrote a letter expressing the city's position that Normal Life was entitled to locate in residential areas zoned single-family along with another letter welcoming Normal Life to the city of Kenner.
Normal Life sought and obtained the approval of the state to license the homes to be located in the city of Kenner. The homes were located in areas which under Ordinance 2427 of the Comprehensive Zoning Text of the city of Kenner were reserved for use by single-family homes.
The houses were opened and started operation. However, subsequently, the city of Kenner received complaints about the homes and the Regulatory Department issued a "cease and desist" order informing Normal Life that its use violated the city of Kenner zoning ordinance and LSA-R.S. 28:478. The city of Kenner then informed Normal Life that the intended use was only permitted in multi-family zoned areas; and, also informed them that they failed to file the applications as required by LSA-R.S. 28:478(C).
When Normal Life would not voluntarily close the homes, the city of Kenner filed a petition for preliminary and permanent injunction. After agreement by the parties, the hearing of the permanent injunction *84 was held on February 28, 1984, and a judgment was rendered in favor of the city of Kenner which permanently enjoined the defendant's operation.
Defendant, Normal Life, thereafter perfected this appeal, alleging the following as error:
that (1) the trial court erred in failing to find that a community home having six or fewer mentally retarded persons living there was a single-family dwelling; and that
(2) the trial court erred in imposing the requirements of LSA-R.S. 28:478 which required that prior approval be obtained from the Kenner City Planning Commission before a community home housing six or fewer mentally retarded persons could be located in the city.
On the first issue, appellant asserts that the definition of community home found in LSA-R.S. 28:381(8), effective August 1, 1983, supercedes the city of Kenner's definition of "single-family" found in the City's zoning ordinance. The city of Kenner defines "single family", in pertinent part, as "four or less unrelated individuals." The statute alleged to be in conflict is contained in Title 28 of the Mental Health Law, Chapter 4 entitled "Mental Retardation and Developmental Disability Law" and encompasses LSA-R.S. 28:380 to 444. The definition section, LSA-R.S. 28:381 states:
"For purposes of this Chapter:
(8) `Community home' means residential living options that are certified, licensed, or monitored by the department to provide residential services to fifteen or fewer mentally retarded or developmentally disabled individuals. Community homes that provides (sic) for six or fewer mentally retarded or developmentally disabled individuals, with no more than two live-in staff, shall be considered single family units having common interests, goals, and problems. A community home that provides residential living options for seven to fifteen mentally retarded or developmentally disabled individuals shall be referred to as a group home." (Emphasis added)
In support of his argument, appellant cites the court to Tucker, et al v. Special Children's Foundations, Inc. et al, 449 So.2d 45 (La.App. 1st Cir.1984) and City of West Monroe v. Ouachita Association for Retarded Children, Inc., 402 So.2d 259 (La.App.2d Cir.1981). As noted by appellee, however, neither case is applicable to our facts. The Tucker court was presented with building restrictions as opposed to a zoning ordinance. The court noted this distinction and remarked that zoning issues in relation to group homes fall within Chapter 5 of Title 28 entitled "Group Homes for Handicapped Persons Act" (LSA-R.S. 28:475-478). Since the Tucker court was not concerned with a zoning issue, the Chapter 4 definition was applied to classify the home as single family for purposes of the building restrictions.
In City of West Monroe, the city's ordinance defined "family" as one or more persons living together as a single housekeeping unit and did not limit the number of persons to four unrelated by blood, as opposed to the ordinance herein. Consequently, this case is distinguishable. Finally, in another case involving community homes, Hays v. City of Baton Rouge, 421 So.2d 347 (La.App. 1st Cir.1982), writ den. 423 So.2d 1166 (La.1982), the city-parish required an applicant for a "special home" permit to obtain signatures of 51 percent of the owners and occupants of all properties located within a 1,000 foot radius of the proposed facility. The ordinance was found not to be violative of the Group Home for Handicapped Persons Act (LSA-R.S. 28:475 et seq.) since the particular facts involved a planned home for seven mentally retarded adults. The court determined the Act requires group homes permitted by right in multi-family areas where the facility is to house "six or fewer" handicapped persons.
After our review, we find that the definition in LSA-R.S. 28:381(8) must be considered in light of Chapter 5, "The Group *85 Homes for Handicapped Persons Act" and in particular LSA-R.S. 28:477 and 28:478.
In this regard, appellant asserts that LSA-R.S. 28:478 is inapplicable as it is in conflict with LSA-R.S. 28:381(8). It is important to note first that LSA-R.S. 28:476 provides that the provisions of Chapter 5 are an exercise of the police power of the state and that it is the policy of the state that:
"... mentally and physically handicapped persons are entitled to live in the least restrictive environment in their own community and in normal residential surroundings and should not be excluded therefrom because of their disabilities. The legislature further declares that the provisions of this Chapter are intended to secure to all of the citizens of this state the right to individual dignity as provided in Article I, Section 3 of the Constitution of Louisiana and to protect the rights and promote the happiness and general welfare of the people of this state."
LSA-R.S. 28:477 defines community home as:
"(1) `Community Home' means a facility certified, licensed, or monitored by the Department of Health and Human Resources to provide resident services and supervision to six or fewer handicapped persons. Such facility shall provide supervisory personnel in order to function as a single family unit but not to exceed two live-in persons."
(Emphasis added)
LSA-R.S. 28:478 states:
"A. In order to achieve uniform statewide implementation of the policies of this Title and of those of the mental retardation law and of the mental health law, it is necessary to establish the statewide policy that community homes are permitting (sic) by right in all residential districts zones for multi-family dwellings.

B. The department shall establish appropriate standards with interpretative guidelines and establish monitoring procedures. In no case shall a community home be placed within a one thousand foot radius of another community home.
C. The local sponsor shall notify the local governing authority of his intent to file an application to the department to open a community home. In any area over which a local planning commission has jurisdiction the site selection shall first be submitted to the local planning commission, which shall recommend approval or disapproval of the site to the local governing authority. The local governing authority shall then affirm or reverse the decision of the planning commission by a majority vote of its entire membership, within forty-five days of the date of the original notification to the local planning commission. In any area in which there is no local planning commission, the local governing authority shall approve or disapprove the site within forty-five days from the date of the original notification to the local governing authority. Whenever the local governing authority has disapproved the site, the local sponsor and the department may develop an alternate site selection for the community home which is acceptable to the local sponsor, the local governing authority, and the department.
(Emphasis added)
These provisions of the Mental Health Law were enacted and added by Acts 1981, No. 892, § 1 effective August 2, 1981. Appellant argues that since LSA-R.S. 28:381(8) was enacted in 1983, the requirements of LSA-R.S. 28:478 have been implicitly repealed or at least are in conflict. The trial judge found, as argued by appellee, that the above provisions are enforceable; and that since appellant failed to comply with the requirements of paragraph C, the injunction was proper.
After reviewing LSA-R.S. 28:477 and 478 together, it is our opinion that LSA-R.S. 28:478 grants the community homes a right to exist in multi-family zoned areas only and that the definition of a community home as a single family unit was not intended to override zoning ordinances which limit the number of unrelated people in the *86 definition of single family. The definition of community home in LSA-R.S. 28:477 in fact utilizes the same language ("single family unit") as found in the recent definition in LSA-R.S. 28:381(8), but LSA-R.S. 28:478, which follows, restricts the right of the homes to exist to multi-family residential areas. Further, the definitions in LSA-R.S. 28:380 are declared to be for the purposes of that Chapter (Chapter 4). Finally we find nothing in the history of the two chapters to indicate that LSA-R.S. 28:380 et seq. implicitly repeals or overrides the provisions in LSA-R.S. 28:475 et seq. The court in Hays, supra, in 1982, it should be noted, applied LSA-R.S. 28:475 et seq. and at that time LSA-R.S. 28:381 contained a similar definition of community home (LSA-R.S. 28:381(5) as that found in the 1983 definition.
Consequently, we find the provisions of LSA-R.S. 28:478 are applicable and that appellant is mandated by law to follow the requirements of paragraph C.
Appellant argues alternatively that the city of Kenner officials misled the appellant into failing to follow the procedures delineated in LSA-R.S. 28:478(C). Thus, appellant asserts that the court should consider whether or not the efforts of Normal Life to get the city planning department to inform it of any requirements, coupled with the letter from the mayor welcoming Normal Life's operation of the homes, satisfy any valid requirements that may be imposed by Section 478.
LSA-R.S. 28:478(C) mandates that the local sponsor who intends to open a community home follow procedures which in effect require the involvement of the local governing authority along with the local planning commission in the decision of site selection for the home. The site selection must be approved by the planning commission and thereafter must be approved by a majority vote of the entire membership of the local governing authority. This provision uses the word "shall" throughout and is a mandatory obligation of the local sponsor. While the facts show that the city officials unfortunately misled appellant through a good intent but erroneous information, those parties are not vested with the authority to waive the requirements of LSA-R.S. 28:478 by the clear language of the statute. The statute reserves the right to the local governing authority and planning commission. The local governing authority is defined in the Louisiana Constitution of 1974, Article 6 § 44(4) as:
"`Governing authority' means the body which exercises the legislative function of the political subdivision."
Consequently, while this court cannot help but sympathize with the plight of the mentally retarded individuals involved, this court is constrained to uphold the trial court's judgment by the clear language of the statute.
After a review of the law and evidence, and for the foregoing reasons, the trial court judgment granting the permanent injunction is hereby affirmed.
Costs of this appeal are to be divided between the parties.
AFFIRMED.
N APPLICATION FOR REHEARING
Appellant presents in his application for rehearing the recent case of Clark v. Manuel and The Lafayette Association for Retarded Citizens, Inc., 463 So.2d 1276 (La. 1985). The opinion was rendered shortly after our opinion in City of Kenner v. Normal Life of Louisiana, Inc., 884-CA-317 (La.App. 5th Cir. February 11, 1985).
In Clark, the Louisiana Supreme Court was presented with the interpretation of a restrictive covenant and the question of the constitutionality of LSA-R.S. 28:478(C)[1]. The court there found the defendants met the requirements of the restrictive covenant, and further found that the requirements placed upon individuals seeking to *87 establish community homes delineated in LSA-R.S. 28:478(C) to be constitutionally "infirm". Our opinion was in part based upon what is now an unconstitutional provision of state law and to that extent is incorrect in light of Clark. However, we also found that the appellants were in violation of zoning ordinance and that the zoning ordinance does not conflict with LSA-R.S. 28:381. The Clark court specifically declined to address the issue of whether or not a local zoning ordinance must fall in face of the legislative policy which encourages the establishment of community homes. Thus, because the zoning ordinance herein is applied to all persons seeking to reside in the zoned area, we do not find Clark mandates either a rehearing or reversal.
Consequently, for the foregoing reasons, appellant's application for rerehearing is hereby denied.
REHEARING DENIED.
NOTES
[1] Found in Title 28 of the Mental Health Law, Chapter 5, The Group Homes for Handicapped Persons Act.